CORNELIA MARTIN

*v.*

WILSON H. STUBBINGS.

*Filed at Ottawa November 15, 1888.*

1. CONSIDERATION—*indebtedness between partners—forming new partnership.* On the settlement of partnership accounts, a balance was found due from one partner to the other. The latter had given notice to terminate the partnership, when a new partnership was formed, in consideration of the debtor partner and his wife giving the other their note for the sum due from him, and his assigning a policy of life insurance in pledge, to secure the note: *Held,* that the indebtedness and the agreement for a new partnership, or either of them, constituted a sufficient consideration for the note, and the transfer of the policy as collateral security.

2. LIFE INSURANCE—*mutual benefit society — how far regarded as a life insurance company, under the statute.* While a mutual benefit society is not a life insurance company, in the restricted sense in which that term is used in the statute relating to life insurance companies, nor a certificate of membership in such society a policy of life insurance in the same restricted sense, yet such membership certificate is in the nature of a mutual life insurance policy, and such contracts are therefore subject to the rules of law governing life insurance policies, except so far as those rules are modified by the peculiar organization, objects and policy of such societies.

3. SAME—*assignment—to whom allowable.* While it is a general rule that no person can procure a valid insurance on the life of another unless he has an insurable interest in such life, yet the rule seems to be, that a person having insured his own life, may, by an assignment of the policy, provide for the payment of the insurance money to a person who has no insurable interest in his life. *A fortiori,* he may make such assignment to one who has such insurable interest, as, to a creditor.

. 4. A creditor may take a policy of insurance directly on the life of his debtor, and, consequently, a policy taken out by a party on his own life, for his own benefit, may be assigned by him in pledge, to secure a debt, and the assignee, on his death, will be entitled to receive the insurance money to the extent of his debt.

5. SAME—*appointing a beneficiary—power of revocation.* In the case of mutual benefit societies, the beneficiary named in the certificate of membership acquires no vested right to the benefit to accrue upon the

death of the member, until such death occurs. The member may, therefore, during his lifetime, exercise the power of appointment, without other limits or restrictions than such as are imposed by the organic law of the society, or rules and regulations adopted in conformity therewith. All the beneficiary has during the life of the member, owing to the right of revocation in the latter, is a mere expectancy, dependent upon the will and act of the holder of the certificate.

6. A certificate of membership in a mutual benefit society, named as beneficiaries the widow, children or heirs of the person procuring the certificate, in the order named, unless otherwise ordered by him during his lifetime, or by his will, in compliance with the application. The constitution of the society, made a part of the certificate, provided that any member, having designated his beneficiary, might change the same at his pleasure, without notice to or consent of the beneficiary already named: *Held*, that the wife of the member had no vested right or interest in the certificate, and that an assignment of the same by the member to a creditor, with his written direction to pay to the creditor, was valid and binding, and passed to the latter the right to receive the insurance money to the extent of his debt.

7. SAME—*who may be made beneficiaries—the statute construed.* The statute relating to mutual benefit societies, by empowering a member to name as his beneficiary his legatee or devisee, without restriction, proceeds upon a policy much broader than those statutes which limit the benefits to the member's relatives, or those dependent upon him. Under the name of "legatee" or "devisee" the member may appoint as his beneficiary any person, whether related to him or not. The mode of selection, whether by will or written direction, is a mere matter of form, and does not go to the substance of the right to select beneficiaries.

8. SAME—*appointing beneficiaries—as to the mode.* A certificate of membership in a mutual benefit society, named as the beneficiaries the member's widow, children or heirs, unless otherwise ordered by him during his lifetime, or by his will. The statute authorizes the naming of legatees or devisees as beneficiaries, but does not forbid the appointment of the beneficiary otherwise than by will. The holder, by assignment of the certificate, directed payment to his creditor: *Held*, that his failure to adopt the mode prescribed by the statute,—that is, by making a will naming the creditor as a legatee,—was doubtless a matter of which the society might object, but that the widow, having no vested rights in the certificate, could not raise this objection.

9. APPEAL—*as to the amount involved.* On a bill by the assignee of a certificate of membership in the nature of a policy of life insurance, issued by a mutual aid society, to compel such society to levy assessments on its members, and to pay over to complainant the sum due him, for which he held the certificate as a pledge for the payment of money,

the wife of the member, and beneficiary therein, being made a defendant, the court found there was due on the certificate $1025, but of that sum $474 was ordered to be paid to the complainant and the balance to the wife, who alone appealed from the judgment of the Appellate Court affirming the decree. It was *held*, that this court had no jurisdiction, as the amount involved was only $474, and there was no certificate of importance.

WRIT OF ERROR to the Appellate Court for the First District; —heard in that court on writ of error to the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

The present record embraces the proceedings and decrees in two separate suits in chancery heard together in the Superior Court, and also in the Appellate Court, by stipulation of the parties, and brought to this court from the Appellate Court by writs of error. The first was a bill of interpleader, brought by the Knights Templars and Masons' Life Indemnity Company against Cornelia Martin and Wilson H. Stubbings, praying that the defendants be required to interplead as to their rights to receive a certain sum of money admitted by the complainant to be due from it on a membership certificate issued by it to Neal K. Martin, the deceased husband of Cornelia Martin. The other was a bill in the nature of a bill for specific performance, brought by Wilson H. Stubbings against the Supreme Council of the Royal League and Cornelia Martin, praying that said Supreme Council be required to levy a mortuary assessment upon its members surviving at the death of said Neal K. Martin, to raise a fund in accordance with its contract with which to pay the amount payable on a certificate of membership issued by said Supreme Council to said Neal K. Martin, in his lifetime, and to pay over said money, when raised, or a part of it to the complainant. A decree was entered upon the first bill requiring the complainant therein to bring into court the sum of $3505.85 admitted to be due and directing that, after the payment of certain costs, the residue, under certain terms and conditions in the decree specified, be paid over to

Stubbings. Subsequently said money was brought into court in pursuance of the terms of the decree, and after the payment of the costs, the residue, amounting to $3281.87, was paid to Stubbings, and the decree so entered was thereupon satisfied and discharged of record. In the second suit, it appearing that the Supreme Council of the Royal League had, after the filing of the bill, collected from its surviving members to apply upon Martin's membership certificate the sum of $1023.28, it was ordered to pay to Stubbings sufficient to satisfy the residue of his claim against said Martin hereinafter more particularly described, and it appearing that there remained the sum of $474.76 of said claim unpaid, that sum was paid to him, and the residue, amounting to $548.52, was paid to Cornelia Martin, thus satisfying and discharging that decree. These decrees were taken by Cornelia Martin by writ of error to the Appellate Court, where both were affirmed. She now brings both of said decrees to this court for review.

The Knights Templars and Masons' Life Indemnity Company is a mutual benefit society, organized, as seems to be admitted, under the provisions of the "Act to provide for the organization and management of corporations or societies for the purpose of furnishing life indemnity or pecuniary benefits to widows, orphans, heirs, relatives and devisees of deceased members, or accident or permanent disability indemnity to members thereof," in force July 1, 1883. The objects of said society, as declared by its constitution, are, "To furnish life indemnity or pecuniary benefits to the widows, orphans, heirs, relatives, devisees or legatees of deceased members," according to certain regulations and provisions in said constitution specified. The only provisions of the constitution material here are the following:

"When an applicant has complied with the constitution and by-laws and been accepted, the board of directors shall make over to him, through the officers of the company, a policy of membership, stating the terms and conditions of the contract

between the parties, which policy shall be sufficient evidence of his membership at the time it was issued, and shall constitute the basis of settlement with the beneficiaries; but no person shall be entitled to the benefits of this company until such certificate is issued and delivered.

"Upon due notice and satisfactory proof of the death of a member of this company, the board of directors shall, within sixty days, pay the widow, children, or heirs of the deceased member (and in the order named, unless otherwise ordered by the member during his lifetime or in his will) the amount set forth in the deceased member's policy of membership.

"Any member, having designated his beneficiary or beneficiaries, may change the same at his pleasure, without notice to or consent of the beneficiary or beneficiaries, and all accepting any interest in this policy or company, do so upon these express terms."

On the 16th day of June, 1884, Neal K. Martin made a written application for membership in said company, and in said application, to the question, "To whom do you wish the benefit paid (unless otherwise ordered in your lifetime, or in your will), and relationship existing between you?" he answered, "My wife, Cornelia Martin." Upon this application, said company, on the 19th day of June, 1884, issued to said Martin a policy or certificate of membership, the material portions of which are as follows:

"In consideration of the agreements and stipulations hereinafter expressed, and a membership fee of six dollars, Neal K. Martin, house and sign painter, of Chicago, Ills., is admitted to membership in the Knights Templars and Masons' Life Indemnity Company, for the term of life, from the 19th day of June, 1884, at 12 o'clock, noon. And in further consideration that the said Neal K. Martin shall pay all dues and assessments made upon him as such member, in pursuance of the constitution and by-laws of said company, at the times and in the manner required of him, the said company will pay,

at their principal office, within sixty days after notice and satisfactory proof of the death of said member is furnished said company, to the widow, children, or heirs of said member, and in the order named, unless otherwise ordered by the member during his lifetime, or in his will, the sum of $5000."

The circumstances upon which Stubbings bases his claim to the moneys payable under said policy or certificate of membership, as also to a portion of the money payable under Martin's certificate of membership in the Supreme Council of the Royal League, are as follows:

On the 16th day of April, 1883, Stubbings and Martin entered into a co-partnership under the firm name of W. H. Stubbings & Co., for the purpose of carrying on the business of painting in all its branches, and the sale of paints, oils, varnish, brushes, etc., in Chicago, such partnership to continue for five years from that date, but it was provided that it might be dissolved at any time by either party by giving three months' notice to the other of his desire to dissolve the same. Stubbings agreed to furnish the capital required to carry on the business, and Martin was to devote all his time and energy to the business and have the entire control of the same, and the profits, after paying for the stock furnished, and all the expenses of the business were to be divided equally between them.

Under this partnership agreement the business of said firm was entered upon and carried on until some time in the early part of the year 1886, when it became known to Stubbings and was admitted by Martin that the latter had drawn out of the firm, not only all of his share of the profits arising from the business, but a large sum of money besides. To ascertain the amount of his overdrafts, Martin himself, during the month of January, 1886, employed one Evans, a competent accountant, who, with the assistance of Martin, examined the firm books and found due from Martin to Stubbings, on the 1st day of January, 1886, the sum of $3411.66. In the months of February and March following, Stubbings and one Annis,

an expert book-keeper, examined the books down to the same date with precisely the same result. While this latter examination was going on, Martin, not satisfied with his former examination, employed one Wright, another expert book-keeper, and went over the books again, and again arrived at the same result.

The extent of the overdraft having been thus ascertained and verified, Stubbings announced his determination to dissolve the partnership and close up their business. The evidence tends to show that Martin, thereupon, proposed that if he would not do so, and would enter into a new arrangement by which the scope of the business would be somewhat enlarged, he would give him a note for the balance as ascertained by the accounting thus had, with his wife as surety, and would deposit as collateral to said note the two certificates of membership above mentioned. This proposition was taken under advisement by Stubbings, and on the 16th day of April, 1886, Stubbings and Martin met at the office of Stubbings' attorney, Mrs. Martin also being present. A negotiation of several hours ensued, Mrs. Martin, according to Stubbings' testimony, being present all the time and taking part. She however testifies that she was present but a few minutes, took no part, and heard little that was said. The negotiation resulted in a substantial acceptance by Stubbings of Martin's proposition.

New articles of co-partnership were thereupon drawn up and executed by Stubbings and Martin, by which they agreed that the articles of co-partnership entered into April 16, 1883, were cancelled and annulled; and that in lieu thereof the parties formed a new co-partnership under the same firm name, for the purpose of carrying on the business of painting, papering in all its branches, and buying and selling painters' goods and materials of all kinds, including paints, oils, varnish, brushes, ladders, etc. It was agreed that said co-partnership should continue for the term of two years from that date but might be terminated by either party at any time by giving the other

three months' notice in writing; that Stubbings should allow the plant and stock on hand belonging to him which had been used in the business of the former firm, to continue to be used in the business of the new firm, and that when necessary, he would also advance the cash capital required to carry on the business and replenish the stock from time to time as might be necessary, the firm to allow him interest on the money advanced; that Martin should devote all his time, attention and energy, so far as his health would permit, to said business, and should have the control and management thereof; that Stubbings, who was engaged most of his time in other business, should spend such time in the business of the firm as he conveniently could; that Martin should keep just and true books of account which should at all times be open to the inspection of Stubbings; that the parties should share equally in the profits, but that no profits should be divided until all the expenses of the business should be paid, and Stubbings reimbursed for the value of the plant and stock contributed by him and all capital which he might advance; that neither party should draw from the business a sum to exceed $150 in any one month during the continuance of the co-partnership, unless by mutual agreement in writing; that at the termination of the co-partnership the parties should make a true, just and final account of all things relating to the business, and that all the money, choses in action and property of the firm, or so much thereof as should be necessary, should go to Stubbings to satisfy whatever might be due him for the plant and stock, and the capital advanced by him, and if such assets should not be sufficient, Martin should pay him his proper share of the deficiency.

Upon the execution of said articles of co-partnership, Martin and his wife executed and delivered to Stubbings the following promissory note for the amount of Martin's indebtedness to Stubbings, as fixed by the accountings above mentioned:

"$3411.66. CHICAGO, *January 1, 1886*.

"One day after date, for value received, we promise to pay to the order of Wilson H. Stubbings the sum of $3411.66, at the office of Wilson H. Stubbings, with interest at the rate of seven per cent per annum after date. Having deposited with said Wilson H. Stubbings as collateral security a policy of life insurance (No. 21) of $4000, issued by the Alpha Council No. 1, the Supreme Council of the Royal League, located at Chicago, Illinois; also a policy of life insurance (No. 200) of $5000 issued by the Knights Templars and Mason's Life Indemnity Company, which we hereby give the said Wilson H. Stubbings, his agent or assignee, authority to collect, or any part thereof, on the maturity of this note, or at any time thereafter, or before, in the event of said securities depreciating in value in the opinion of Wilson H. Stubbings, or his assignee, at public or private sale, at the discretion of said Wilson H. Stubbings or his assignee, without advertising the same or demanding payment or giving him any notice, and to apply so much of the proceeds thereof to the payment of this note as may be necessary to pay the same with all interest due thereon, and also the payment of all expenses attending the sale of the said securities, including attorney's fees; and in case the proceeds of the sale of the said securities shall not cover the principal, interest and expenses, we promise to pay the deficiency forthwith, after such sale.

NEAL K. MARTIN, ·<br>CORNELIA MARTIN."

Accompanying said note was a warrant of attorney authorizing an entry of judgment thereon at any time after the maturity thereof.

At and for some time prior to the execution of the articles of co-partnership and note, Martin was in poor health, and after the formation of the new partnership he was able to give little or no attention to the business of the firm. His health continued to decline until the 27th day of July, 1886, when he

died.   After his death Stubbings caused judgment to be entered against Mrs. Martin by virtue of said warrant of attorney for the amount of the note, and a motion by her, based on certain affidavits, to vacate the judgment and for leave to plead having been denied, an appeal was taken to the Appellate Court where said judgment was reversed and the cause remanded with directions to the court below to permit Mrs. Martin to plead.   (*Martin* v. *Stubbings*, 20 Ill. App. 381.) Shortly after the reversal of that judgment the present suits were commenced.

Mr. MILLARD R. POWERS, and Mr. ROBERT S. ILES, for the plaintiff in error:

It is conceded that $3411.66 was the amount claimed to be an over-draft made by Martin from the firm, up to January 1, 1886, that the note of Martin and wife was executed to meet such over-draft, and that the partnership continued, without interruption, from April 16, 1883, to April 16, 1886; also, that the accounts of the firm were balanced only to January 1, 1886, and that no accounting was had of the business done by the firm between January 1, 1886, and April 16 following, at which time the note was executed, and the certificates of membership deposited as collateral security thereto.   Therefore, there was no consideration for the note.   *Chadsey* v. *Harrison*, 11 Ill. 151; *Sewell* v. *Cooper*, 21 La. Ann. 582; *Stubbings* v. *Martin*, 20 Bradw. 381; *Stookey* v. *Hughes*, 18 Ill. 55.

The fund created by the membership of Martin could not be assigned to pay debts.   *Briggs* v. *Earl*, 139 Mass. 473; *Duval* v. *Goodson*, 79 Ky. 224; *Daniels* v. *Pratt*, 143 Mass. 221; *Benevolent Association* v. *Clendinen*, 44 Md. 420; *Legion of Honor* v. *Perry*, 140 Mass. 580; *Van Bibbers* v. *Van Bibbers*, 14 Ins. Law J. 290; *Eastman* v. *Relief Association*, id. 858; *Aid Association* v. *Gonser*, id. 434; *Felix* v. *A. O. U. W.* 13 id. 234.

Mrs. Martin, as beneficiary, had no assignable interest in the fund created by her husband's membership. *Aid Society* v. *Lewis,* 9 Mo. App. 412; *Richmond* v. *Johnson,* 28 Minn. 447; *Durian* v. *Central Verein,* 7 Daly, 168; *Swift* v. *Benefit Association,* 96 Ill. 309.

A change of beneficiary must be made in accordance with the by-laws and rules of the association, and an attempt to otherwise change, confers no rights on the new beneficiary. *Coleman* v. *Supreme Lodge,* 18 Mo. App. 189; *Catholic Benefit Association* v. *Priest,* 46 Mich. 431; *Stephenson* v. *Stephenson,* 64 Iowa, 534; *Johnson* v. *Van Epps,* 110 Ill. 563; *Morley* v. *Aid Association,* 10 Fed. Rep. 329; *Benefit Association* v. *Brown,* 33 id. 11.

Messrs. HOYNE & FOLLANSBEE, for the defendant in error:

Stubbings and Martin having made a settlement of their partnership affairs up to January 1, 1886, and Martin having given his note to Stubbings for the balance found, upon the settlement, to be due from him to Stubbings at that time, Stubbings could sue him on the note, whether the partnership continued after the settlement or not. *Sturges* v. *Swift,* 32 Miss. 239; *Preston* v. *Strutton,* 1 Aust. 50; *Brierly* v. *Cripps,* 7 C. & B. 709; *Van Ness* v. *Forrest,* 8 Cranch, 30; *Caswell* v. *Cooper,* 18 Ill. 532; Parsons on Partnership, *278; 2 Lindley on Partnership, 1027; *Anderson* v. *Robertson,* 32 Miss. 241; *Sprout* v. *Crowley,* 30 Wis. 187; *Ives* v. *Miller,* 19 Barb. 196.

The execution of the new articles of co-partnership, by which the scope of the business theretofore carried on between Stubbings and Martin was enlarged, and by which Martin was to devote only such time to the same as his health would permit, and by which Stubbings was limited as to the amount of money which he could withdraw from the firm monthly, and by which he waived his right to terminate all business relations existing between them, was a sufficient consideration for the execution of said note by Martin and wife, and a sufficient consideration

for the deposit of said collaterals by them. 1 Parsons on Contracts, 431; *Doyle* v. *Knapp,* 3 Scam. 334; *Burch* v. *Hubbard;* 48 Ill. 164; *Buchanan* v. *International Bank,* 78 id. 500; *Trust Co.* v. *Rigdon,* 93 id. 458; *Joliet Iron Co.* v. *Brick Co.* 82 id. 548; *Benton* v. *Holliday,* 44 Ark. 56; *Miller* v. *Hawker,* 66 id. 185.

Parol evidence is admissible to show what the consideration in fact was for the execution of the judgment collateral note and the deposit of the collaterals. *Grier* v. *Puterbaugh,* 108 Ill. 602; *Kidder* v. *Vandersloot,* 114 id. 133; *Huebsch* v. *Scheel,* 81 id. 281; *Wolf* v. *Fletemeyer,* 83 id. 418; *Primm* v. *Legg,* 67 id. 500; *Booth* v. *Hynes,* 54 id. 363.

The statement of Mrs. Martin that she does not remember having or hearing certain alleged conversations with her husband and Stubbings in regard to the terms and conditions upon which the new articles of co-partnership were entered into, will not be regarded as a contradiction of the affirmative testimony of Stubbings, and others, that such conversation was had. *Vanpelt* v. *Hutchinson,* 114 Ill. 435; *Railroad Co.* v. *Coyer,* 79 id. 373; *Railroad Co.* v. *Dickson,* 88 id. 431.

It is no longer an open question in this State that life insurance policies or benefit certificates, such as those in controversy, are the subject of pledge or assignment, and that no principle of public policy is contravened in permitting the same to be done. This is also true in other States, where not prohibited by statute or the contract of insurance itself. *Norwood* v. *Guerdon,* 60 Ill. 253; *Pomeroy* v. *Life Ins. Co.* 40 id. 398; *Highland* v. *Highland,* 109 id. 366; *Johnson* v. *Van Epps,* 110 id. 551; *Benefit Association* v. *Blue,* 120 id. 121; *Norris* v. *Insurance Co.* 131 Mass. 294; *Troy* v. *Sargeant,* 132 id. 408; *Life Ins. Co.* v. *Allen,* 138 id. 24; *Briggs* v. *Earl,* 139 id. 473; *Emerick* v. *Coakley,* 35 Md. 138; *Life Ins. Co.* v. *Miller,* 13 Bush, 489; *Baker* v. *Young,* 47 Mo. 453; *Archibald* v. *Life Ins. Co.* 38 Wis. 542.

Even if the policy could not be pledged to Stubbings, that objection could be raised only by the companies, and not by Mrs. Martin. *Johnson* v. *Van Epps*, 110 Ill. 551.

At the time Martin pledged said benefit certificates with Stubbings, as collateral security for his indebtedness to him, Mrs. Martin had no interest in them. All she had was a mere expectancy, which, had he retained his interest in the policies, would have ripened into a vested right upon his death. As it was, he disposed of a part of his rights thereunder, for a valuable consideration, prior to his death, and if not done in conformity to the rules of the associations, they alone can complain. *Swift* v. *Benefit Association*, 96 Ill. 309; *Norwood* v. *Guerdon*, 60 id. 253; *Aid Society* v. *Lewis*, 9 Mo. App. 412.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The amount involved in the case of Stubbings vs. The Supreme Council of the Royal League and Cornelia Martin is only $474.76. It is true the amount found due from the Supreme Council of the Royal League on the membership certificate of Neal K. Martin, deceased, was $1023.28, but of that sum $548.52 was ordered to be paid and was in fact paid to Cornelia Martin, and only $474.76 was ordered to be paid to Stubbings. The Supreme Council of the Royal League is not complaining, the writ of error having been sued out by Cornelia Martin alone. As between her and Stubbings, the only parties to the present controversy, only $474.76, or less than $1000 is involved. There is no certificate by the judges of the Appellate Court that the case involves questions of law of such importance, either on account of principal or collateral interests, that it should be passed upon by this court. It follows that in that case the writ of error was improvidently issued, and it must therefore be dismissed.

In the other case, the one involving the certificate of membership in the Knights Templars and Masons' Life Indemnity

Company, Mrs. Martin bases her right, as against Stubbings, to receive the money payable on said certificate on two grounds, first, that there was no sufficient legal consideration to support either the note executed by her and her husband to Stubbings or the assignment to him of the certificate of membership, and second, that during Martin's lifetime said certificate was not assignable so as to vest in the assignee the right to receive the money payable thereon at Martin's death.

In support of the first of these propositions counsel have sought to avail themselves of the principles discussed and adopted by the Appellate Court when the case was before that court on motion to vacate the judgment against Mrs. Martin entered on said note by confession.    See *Martin* v. *Stubbings*, 20 Ill. App. 381.    In that case, it will be observed, the decision was based upon the facts established by certain *ex parte* affidavits, which, for the purposes of the decision, the court was compelled to take as true.    The facts thus shown were, among others, that at the time the note was given the partnership had not been dissolved, but continued after its execution and was dissolved only by the subsequent death of Martin; that no accounting took place and no balance was struck in Martin's lifetime; that the consideration of the note was an estimated balance which was not arrived at by any accounting, and was not regarded or treated by the parties as the true balance, but was subject to correction when an accounting should be had and a balance ascertained.    A state of facts entirely different and calling for an application of entirely different rules of law was presented by the pleadings and proofs at the hearing in the present case.    That the partnership was in fact dissolved at the time the note was given is now placed beyond the possibility of question by the express covenant of the parties in their new articles of copartnership that such was the case.    It also appears without contradiction that a most careful and thorough accounting was had in respect to all the business of the firm down to

January 1, 1886, which showed that Martin, who contributed nothing to the capital of the firm and whose interest was only in the profits, had drawn out his entire share of the profits and the sum of $3411.66 in addition thereto. Had the firm been dissolved January 1, Martin would, according to the accounting, have been indebted to Stubbings in the sum above mentioned. The evidence fails to show whether or to what extent the accounts between the parties were affected by the firm business transacted between January 1 and April 16, the date of the new partnership agreement, but the presumption may be indulged in that very little if any business was transacted during that interval. However that may be, it was clearly competent for the parties, on dissolving their co-partnership, to agree upon the balance due, if they saw fit to do so, without a new accounting. It was competent for them to adopt the balance of January 1 as the true one, and disregard subsequent transactions, and this they are clearly shown to have done. The firm being dissolved and the amount due from Martin to Stubbings being ascertained and agreed upon, such balance constituted an individual indebtedness from Martin to Stubbings which was a sufficient consideration both for the note and for the assignment of the certificates of membership.

But this is not all. The execution of the new articles of co-partnership was a consideration sufficient to support Mrs. Martin's execution of the note as surety. It should be observed that the note recites no particular consideration, and it is therefore admissible in order to establish the liability of any of the parties to it, to resort to extrinsic evidence to show a consideration. See *Martin* v. *Stubbings*, 27 Ill. App. 121, and authorities there cited. The execution of the note by Martin and wife and the deposit with Stubbings of Martin's certificates of membership as collateral security, was the inducement to Stubbings to consent to a new co-partnership, instead of terminating his business relations with Martin per-

emptorily and at once. There can be no doubt that the note and collaterals were given to obtain a renewal of the partnership relation, and such renewal, coupled with the existing and admitted indebtedness from Martin to Stubbings, was a sufficient consideration for Mrs. Martin's signature and for the deposit of the collaterals.

The question remains whether the certificate of membership in the Knights Templars and Masons' Life Indemnity Company was assignable in Martin's lifetime so as to vest in the assignee the right to receive the money payable thereon at Martin's death. This question is, we think, substantially settled by the decision of this court in *Bloomington Mutual Benefit Association* v. *Blue,* 120 Ill. 121. Counsel, however, have seen proper to re-argue it at considerable length, and we have therefore been disposed to reconsider the question in the light of the numerous authorities to which our attention is now directed.

It should be observed that the question comes up here in a somewhat different form from the one presented in the case last cited. There the controversy was between the mutual benefit society and the person to whom the fund, by the terms of the membership certificate, was made payable. The society denied its liability on the ground that the person to whom the money was appointed to be paid was not one of those enumerated by the statute as proper beneficiaries. Here the society admits its liability, and the only question now is, to which of two parties, the assignee or the widow, the money admitted to be due shall be paid. The court has decreed it to the assignee, and the decree must be affirmed unless the widow has succeeded in establishing a better title. She being the only one complaining, if she has failed to prove title to the money, it is quite unimportant here what disposition the court has made of it, since no one having a right to do so is calling such disposition in question.

A mutual benefit society is not a life insurance company in the restricted sense in which that term is used in our statute in relation to life insurance companies, nor is a certificate of membership in such society a policy of life insurance in the same restricted sense of the term, yet it is manifest that such membership certificate is in the nature of a mutual life insurance policy. *Commonwealth* v. *Wetherbee*, 105 Mass. 161; *State* v. *Benevolent Society*, 72 Mo. 146; *Supreme Commandery* v. *Ainsworth*, 71 Ala. 436; *Sherman* v. *Commonwealth*, 82 Ky. 102; *State* v. *Vigilant Ins. Co.* 30 Kan. 585; *State* v. *Northwestern Mutual Life Ins. Co.* 16 Neb. 549; *State* v. *Mutual Benefit Association*, 18 id. 276; *Illinois Masons' Benevolent Society* v. *Winthrop*, 85 Ill. 537; *Illinois Masons' Benevolent Society* v. *Baldwin*, 86 id. 479; Niblack on Mutual Benefit Societies, 193. Such contracts are therefore subject to the rules of law governing life insurance policies, except so far as those rules must be held to be modified by the peculiar organization, objects and policy of such societies.

While it is a general rule that no person can procure a valid insurance on the life of another unless he has an insurable interest in such life, policies issued where there is no such interest being deemed to be mere wager policies, yet the rule seems to be that a person having insured his own life, may, by an assignment of the policy, provide for the payment of the insurance money to an assignee who has no insurable interest in his life. See authorities cited in *Bloomington Mutual Benefit Association* v. *Blue, supra*. A fortiori may he make such assignment to a person having such insurable interest. In this case Stubbings was a creditor of Martin, and so had an insurable interest in his life. Bliss on Life Insurance, secs. 13, 27. He might have taken out a policy of insurance directly on the life of his debtor, and there can therefore be no doubt that had the case been one of an ordinary life policy taken out by Martin on his own life and for his own benefit, the assignment of such policy by him to Stubbings would have been per-

fectly valid, and would have vested in the latter the right to receive the insurance money at Martin's death.

If any different rule applies in this case, such rule must find its basis either in the terms of the contract evidenced by the certificate of membership, or in the provisions or policy of the statute under which the certificate of membership was issued. It must be admitted that there is neither in the statute or contract any express prohibition of an assignment by a member of his certificate of membership to his creditor, so as to constitute such creditor a beneficiary of the fund payable at the member's death. But the position taken by counsel is, that the policy of the statute is to limit the persons who may become beneficiaries to certain enumerated classes, and that such limitation is implied in the provisions both of the statute and contract.

Most of the decisions seem to concur in holding that, in case of mutual benefit societies, the beneficiary named in the certificate of membership acquires no vested right to the benefit to accrue upon the death of the member, until such death occurs. The member may therefore, during his lifetime, exercise the power of appointment, without other limits or restrictions than such as are imposed by the organic law of the society or the rules and regulations adopted in conformity therewith. *Masonic Mutual Benefit Society* v. *Burkhart*, 110 Ind. 189; *Presbyterian Mutual Assurance Fund* v. *Allen*, 106 id. 593; *Splawn* v. *Crew*, 60 Texas, 532; *Johnson* v. *Van Epps*, 110 Ill. 551; Niblack on Mutual Benefit Societies, sec. 201. All the beneficiary has during the lifetime of the member, owing to the member's right of revocation, is a mere expectancy, dependent upon the will and act of the holder of the certificate. Cases where a different rule has been announced seem to be confined to those where the organic law of the society prohibits a change in the beneficiary first designated.

In the present case, the power of revoking or changing the appointment of the beneficiary was reserved to Martin by the

terms of the contract in the broadest possible manner. By his application for membership Mrs. Martin was designated as beneficiary, unless he should otherwise order in his lifetime or by his will, and in substantial compliance with the application, the certificate named as beneficiaries, his widow, children or heirs, in the order named, unless otherwise ordered by him during his lifetime or by his will. The constitution of the society which was incorporated into and made a part of the certificate of membership, provided that any member, having designated his beneficiary or beneficiaries, might change the same at his pleasure, without notice to or consent of the beneficiary or beneficiaries, and that all accepting any interest in the certificate or the society, did so upon those express terms. Under these circumstances it is perfectly clear that Mrs. Martin had no vested interest or property rights in the certificate of membership or the moneys to become payable thereunder, during the lifetime of her husband, and that the certificate, at the time it was assigned to Stubbings, was subject to the absolute control of Martin, and that it was then in his power, either with or without the consent of his wife, to make any disposition of it which did not conflict with the terms of the contract itself, or the organic law of the society.

Was there either in the statute under which the society was organized, or in the constitution of the society, an implied limitation or restriction upon Martin's power of appointment of beneficiaries which made it unlawful for him to assign the certificate to his creditor as security for his debt? The first section of the statute under which the society was organized provides for the organization of corporations, associations or societies for the purpose of furnishing life indemnity or pecuniary benefits to the widows, orphans, heirs, or relatives by consanguinity or affinity, devisees or legatees, of deceased members, and the constitution of the society, in enumerating the objects for which the society was organized, follows precisely the language of the statute. It can not be contended

that Stubbings could by any possibility, be included within the meaning of the terms, "widow, orphans, heirs, or relatives by consanguinity or affinity," nor can he be properly classed as a "legatee or devisee," as he could be made such only by Martin's will.

It is clear, however, that the statute, by empowering a member to name as his beneficiary his legatee or devisee, without restriction, proceeds upon a policy much broader than do those statutes which limit the benefits to accrue upon the death of the member to his relatives or those in some way dependent upon him. Under the name of legatee or devisee, the member is given the power to appoint as his beneficiary any person however related to him or not related to him at all. He may, in the selection of his beneficiary, be governed by considerations of affection or duty, or he may yield to the dictates of mere caprice, subject only to the limitation that the appointment be made by will. The legislature having thus enlarged the category of those capable of being selected as beneficiaries so as to include all persons whom the member may see fit to select as his legatees or devisees, we can perceive no substantial rule of public policy which would be violated by the adoption of a different mode of selection of a beneficiary. No substantial rights of any party are better secured or protected by one mode of appointment than by another. The mode of selection is mere matter of form and does not go to the substance of the right to select beneficiaries.

We are aware that upon the general proposition we are discussing the decisions of the courts are not altogether harmonious, and that some courts of high respectability have reached a different conclusion. Those decisions, however, so far as we have been able to examine them, seem to be based upon statutes essentially different from ours. Thus, *Briggs* v. *Earll*, 139 Mass. 473, was a case arising under a membership certificate where the purposes for which the society could be formed were strictly limited by statute to rendering assistance

to the widows and orphans of deceased members and the persons dependent upon them. It was there held that an assignment of the membership certificate as security for a debt was invalid. In *Dietrich* v. *Madison Relief Association,* 45 Wis. 79, the charter of the association declared that its business should be to afford relief to the widows and children of deceased members, and that to such business it should be limited and restricted, and it was held that an assignment by a member of his membership certificate to the association to secure a debt which he owed to it was void by reason of the want of authority in the association to take it. Authorities of the class to which the foregoing belong manifestly have no application here.

The assignment of the certificate of membership to Stubbings is not within the strict letter of the statute but in the absence of all negative words forbidding the appointment of a beneficiary in any other mode than the one prescribed, the assignment to him is not necessarily unlawful and therefore void. He was a person capable under the statute of becoming a beneficiary, and the absolute right of naming him as such was in Martin. His failure to adopt the mode prescribed by the statute, that is by executing a will making Stubbings his legatee, was doubtless a matter of which the society could probably object, but Mrs. Martin had no rights in the certificate which could justify her in interposing an objection. She was to all intents and purposes a stranger to the transaction. Her rights could arise only upon the death of Martin, and then only in case he had wholly failed to make a valid and effectual appointment of another beneficiary in her place.

It can not be doubted that Martin at any time before his death, so long as the membership certificate was his property and subject to his absolute dominion and control, might have surrendered it to the company for cancellation. If he had done so his wife would have had no legal ground of complaint. The power of designating his beneficiaries being wholly under

his control, he had the power of determining who should not as well as who should be such beneficiaries. In making the assignment of the certificate to Stubbings he appointed him to receive the benefit to accrue at his death to the extent of the debt due him, and by the same act he revoked the appointment of Mrs. Martin as a beneficiary to the same extent. She being no longer a beneficiary, has no interest which can give her a standing to contest the validity of the assignment to Stubbings, and the society having recognized the validity of said assignment, and professed a willingness to pay the money to him, there was no error of which Mrs. Martin can complain in the decree of the court ordering such payment to be made.

We find no error in the record, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*