MALACHI C. BUFFINGTON *v.* MARTHA THOMAS.

1. WILLS. *Holograph. Private letter. Request for secrecy.*

    A letter, testamentary in its character, wholly written, dated and signed by the testator, is a valid holographic will, although it contains a request that the person to whom it was addressed should keep its contents private.

2. SAME. *Request for answer. Contingency.*

    An holographic will, in form a letter reciting that the testator was in bed, did not know that he would live until the next day, and requesting an answer from the person to whom it was addressed, is not dependent upon a contingency, although it was never answered and the testator lived several months after writing it.

FROM the chancery court of Yazoo county.

HON. ROBERT B. MAYES, Chancellor.

Buffington, the appellant, contested the will of his wife, Mamie; Mrs. Thomas, the appellee, was the contestee. From a decree probating and establishing the will the contestant appealed to the supreme court. The will was in form a letter in the following words:

"SAN ANTONIO, TEX., Dec. 25, 1898.
"*Mr. Edward Drenning.*
` "DEAR FRIEND—This leaves me in bed with high fever. I do not know whether I shall live to see morning. I came to West Texas for my health and did very well until lately. I was

taken with fever, from which I may never recover. You have from childhood always shown yourself a friend. Now, I am sick, I have one more favor to ask: in case that I die see that old Buffington has nothing of mine, not even a lock of my hair. Eliza did what she could for me and I want her to have our home in Yazoo City. Buffington has not given me a copper. I could say more, but am too sick. Answer at once.

"Truly yours,          MAMIE BUFFINGTON.

"(This is private.)".

The case was tried by the chancellor, a jury having been waived by the parties, on an agreed statement of the facts, which was as follows:

"It is agreed in this case that the letter offered for probate as the last will and testament of Mamie Buffington is wholly in the handwriting of the said Mamie Buffington and signed by her. It is further agreed that the said Mamie Buffington went to Texas for her health, but did not die until the 9th day of June, 1899, and that Edward Drenning, the party to whom the letter was addressed, never made any reply to the same and never had any other or further letter from the said Mamie Buffington.

"No question is raised as to the marriage of Malachi C. Buffington and Mamie Buffington, and the question is not raised as to the right of Martha Thomas to take under the will if the same be declared to be a valid will."

*Barnett & Perrin,* for appellant.

The facts in this case are agreed upon, and hence the construction of the letter as to whether it should be admitted to probate as a last will and testament is one of law. Granting for the sake of argument that the letter is testamentary in character, under the agreed state of facts it should not be admitted to probate because it is contingent in its nature and the contingency did not happen. What construction shall we put

upon the language of this letter? Of what was Mrs. Buffington expecting to die? When was the dissolution looked for? Evidently the writer could have had reference only to her then present state. It was the then present sickness, the fever, that was in her mind, and not her death from any other cause; and yet we find that she did not die for more than six months afterwards, of what disease is not known, for no proof was offered with regard thereto. The letter should be construed as a whole, and not by sections or sentences, and if this be true, surely the words "In case that I die" must relate back to the sickness before referred to, and can with no degree of fairness be construed into a general expression. It seems necessarily to follow that the only intention expressed in the letter was what she wanted done in case her then present sickness terminated fatally. What her intention was six months afterwards is impossible to tell. Nowhere in the letter appear any words of a general character indicating the uncertainty of life or the certainty of death, and we therefore conclude that the phrase "In case that I die" can only relate to the then present ailment—namely, the fever from which the writer was suffering. Even if the letter be of a testamentary character, it is based upon a contingency, and the contingency not happening the same is void as a testamentary document. *Magee v. McNeil,* 41 *Miss.,* 17; *Maxwell v. Maxwell,* 3 Met. (Ky.), 101; *Parsons v. Lanoe,* 1 Ves., 189; 29 Am. & Eng. Ency. Law [1st ed.], 131.

The most that can be said of it is that the epistle is in the nature of instructions to a friend to take the proper steps to see that the wishes therein expressed should be carried out. The closing expression "answer at once" shows that even the writer was expecting further light on the subject. The parenthesis "This is private" shows that what advice Drenning should give would be confidentially received, and what information was given him by the letter should be treated in the same manner. The expression "I could say more, but am too sick" shows still

further incompleteness and is capable of more than one inter-pretation. It could mean that she could say more derogatory to. Buffington, but it could also mean that she could say more with regard to the disposition of her property. It is the *animus testando* which makes any instrument a will or *vice versa. Boofter* v. *Rodgers,* 52 Am. Dec., 680; *McGee* v. *McCamps,* 1 McCord, 517; *Coombs* v. *Jolly,* 3 N. J. (Eq.), 625.

The identical paper must have been written *Animo Testandi. McBride* v. *McBride,* 26 Grat., 481; *Edwards* v. *Smith,* 35 Miss., 197; *Young* v. *Wark,* 76 Miss., 829; *In re Estate Rich-ardson,* 15 L. R. A., 635; *Morsell* v. *Ogden,* 24 Md., 382; *Estate of Mead,* 62 Am. Dec., 244; *Lungren* v. *Swartzwelder,* 44 Md., 482.

*Harris, Powell & Harris,* on the same side.

This case must be reversed because there is no proof that the alleged testatrix was of sound mind, the law not indulging any presumptions in her favor. Code 1892, § 4488; *Martin* v. *Perkins,* 56 Miss., 210.

First—Was the letter from Mamie Buffington to Mr. Dren-ning intended by her to be her last will and testament in· and of itself alone? Second—Or was it intended by her as a memo-randum or intimation for his guidance in the preparation by him for her of a more formal and more complete will? Third —Or was it only the outpouring of a sick and nervous wife over some fancied grievance, and written in confidence to an old friend, and neither understood nor intended by her to be a final disposition of her property?

We unhesitatingly affirm that one or the other of the last two theories is the correct view to be taken by the court. The letter only expresses a wish to dispose of a small part of the writer's property, and she must have known that old Buffington would get the rest, unless a will was made conveying the rest of it. Undoubtedly it was to have Drenning do this very thing that caused the letter to be written. The letter was evidently

written under a high nervous strain, possibly caused by some fancied slight of her absent husband and forgotten as soon as written.  As long as nervous, emotional women exist such things may happen in the best regulated families.  Buffington may have been, and possibly was, a loving and devoted husband, and this letter by a wife, away from home and sick, but the temporary expression of a nervous mind.  If temporary ebulli- tions of passion, as expressed in this letter, are to assume the grave dignity of testamentary dispositions, then no husband, however kind, is safe from the temporary pique or jealousy of his wife.  Should this court say that stray letters like this, the mere expression to an old friend of temporary passion, when the mind is despondent and the body diseased, have all the requirements of legal documents in diverting the descent of property between "Those whom God hath joined together," we would still say, Long live the court, God bless our homes, God bless our wives, but God pity the man who has a nervous wife, who is too ready with her pen.  We refer the court to the case of *Lungren* v. *Swartzwelder,* 44 Md., 482.

*Ricketts & Peyton,* for appellee.

The agreed statement of facts in this case brings it to a single issue: whether the letter of Mamie Buffington constitutes a valid will under our law.

. Take into consideration the circumstances surrounding and which led up to the writing.  This woman, Mamie Buffington, suffering with consumption, had gone to Texas in search of health.  She was an ignorant woman.  Her condition had be- come serious, and at the time of writing the letter she was in bed with fever.  She writes the letter to Drenning, her friend, making disposition of her property after her death, with confi- dence that Drenning, a lawyer, would upon her death, armed with this letter as his authority, turn over her property in Yazoo City to her sister Eliza.  The letter fulfills the requirements of law.  In the case of *Anderson* v. *Pryor,* 10 Smed. & M., 620,

this court has defined the requisites of a will of this kind. They say: "A letter or letters written wholly in the handwriting of the decedent, in which he expresses clearly an intent to make a disposition of his property after his death, are testamentary, and may be admitted to probate as the will of the writer." What would the "answer at once" reasonably suggest? Simply that she desired to know whether the letter had reached Drenning safely, if she lived long enough to get a reply from him, and was equivalent to saying: "Please acknowledge receipt." In adding to her letter "This is private," testatrix simply expressed a desire that it should not be made public in her lifetime. *Habberville* v. *Broening,* 4 Vesey Jr. P., 199 note; Underhill on the Law of Wills, Vol. 1, pp. 51, 52; *Morrell* v. *Dickey,* 1 Johns (Chan.), N. Y., 153; *Gratton* v. *Appleton,* 3 Story (U. S.), 755.

It is shown by the pleadings, and not denied, that the testatrix was suffering with consumption, was seriously ill at the time of writing the letter. This condition, being once established, is presumed to have continued until her death. 1 Greenleaf on Ev., sec. 41; *Newman* v. *Bank,* 67 Miss., 770. Should we concede for argument that this is not true, the case of *Redhead* v. *Redhead,* 83 Miss., 141, would certainly govern. In the case at bar the only contingency that is hinted at is the death of the testatrix, like the Redhead case. She wrote the letter because she wanted to dispose of her property after her death. She did not say, as counsel ingeniously attempt to argue, "In case I do not recover from this fever," or "in case I die tonight."

In every case cited by opposing counsel the writer was about to be subjected to some certain danger, and it was his purpose to make provision for the settlement of his business affairs in the event of the happening of some particular event named in the instrument.

The *animus testandi* is the intention in the mind of the testator to make or have made a certain disposition of his

property after his death.    The testamentary intent is mani-
fested.    "I want Eliza to have our home in Yazoo City."
*Eaton* v. *Brown,* 193 U. S., 411.

Argued orally by *R. B. Ricketts,* for appellee.

CALHOON, J., delivered the opinion of the court.

The instrument was properly probated as a will. The acute
attack of fever was the inducement to the woman to indicate
her last wishes, and her dominant idea was to express them,
and to say what she wanted "in case I die," and she gives her
reason for the wish.    The request to "answer at once" perhaps
indicates only the desire to know whether the letter reached its
destination.    There is no presumption that it was designed to
alter its nature.    And so of the words "this is private."    From
the purport of the whole paper, manifest reasons would militate
against publication during the life of the writer.    *Anderson* v.
*Pryor,* 10 Smed. & M., 620; *Redhead* v. *Redhead* (Miss.), 35
South., 761; "All opinions," *Eaton* v. *Brown,* 193 U. S., 411.

*Affirmed.*