**BENSON et al. v. BENSON et al.**

No. 16221.  Opinion Filed April 12, 1927.

Rehearing Denied June 14, 1927.

(Syllabus.)

1. **Wills—Probate of Will—Sufficiency of Evidence on Appeal.**

Where the probate of a will is contested

and the testimony is conflicting as to the execution of the will, the judgment of the trial court will not be disturbed if there is any substantial testimony supporting the judgment and findings of the court.

**2. Insurance—Wills—Right of Insured by Holographic Will to Change Beneficiaries.**

An insured, notwithstanding that certain beneficiaries are named in a policy of insurance, may by holographic will dispose of the insurance, unless it is shown by clear and binding provisions of the policy or by law applicable that he is deprived of such right.

Error from District Court, Marshall County; Porter Newman, Judge.

From a judgment of the County Court of Marshall County, admitting to probate the will of King B. Benson, deceased, making Ophelia Ladeen Benson and Laura Jean Benson beneficiaries, the contestants, D. L. Benson and Jackie Stroud Benson, appealed to the district court, where, on trial de novo, the judgment was affirmed, from which contestants appeal. Affirmed.

Don Welch, for plaintiffs in error.

A. A. Kelley, for defendants in error.

RILEY, J. This is an appeal from a judgment of the district court below rendered on September 25, 1924, sustaining a judgment of the county court of Marshall county entered October 22, 1923, admitting to probate the writing in question as the holographic will of King B. Benson, deceased.

The facts are substantially as follows:

King B. Benson was a soldier in the United States Army during the World War. During his service he secured a war risk insurance policy in the sum of $10,000, and D. L. Benson and Jackie Stroud Benson, his brothers, were beneficiaries under the policy. After receiving an honorable discharge from the service and in 1920, he married Ophelia Ladeen Benson, and of this union a child, Laura Jean Benson, defendant in error, was born.

At the time of deceased's discharge from the service he was afflicted with tuberculosis, and as a result thereof he died in Marshall county on January 9, 1922.

It is not disclosed that premiums were paid on the insurance policy, and it was considered that the policy had lapsed until within a month of the insured's death, when he received notice from the war risk insurance bureau that, by reason of his disability, the policy was in force and the bureau mailed a check for $491, to him, and thereafter because of some error in the check its return was requested.

In January, 1923, after decedent's death, a purported will was found by Mrs. Dowell. in some of deceased's old clothes. The writing is in words and figures as follows:

"Madill, Okla., Jan. 3, 1922.

"War Risk Insurance.

"Will write concerning my policy which was made to my bros. Stroud Benson and Lafayette Benson I want it changed and made to my wife Ladeen Benson and Baby Laura Jean B. Daughter. I received a check for $491. It is now payable I am asking you to change it at once as I feel very poorley and that my life is very short.

"I had it made to my Bros. before I married and I feel like that if it can ever be paid to anyone it ought to be to my loved ones and my baby is little and weakly.

"Please let me hear from you at once.
                          "King B. Benson,
                          "Madill, Oklahoma.
                          "Box 355.
"C. 587117,
"Pvt Co C 310 Field
"Sig bn."

Roy Loomis testified that on a Sunday in January, 1922, a few days prior to the death of Benson, the deceased asked him "if he knew of any way in which he could go about it to have this policy changed to his wife and baby," and he answered:

"So I told him the only thing I knew was for him to write a letter to the War Risk Insurance Company himself, and ask them to change it, and he said he would do it; that he had asked his brothers, Fate and Stroud, to help him and they refused and wouldn't do it."

As found by Mrs. Dowell, mother of defendant in error Ophelia Ladeen Benson, the purported will was enclosed and sealed in an envelope addressed to "War Risk Insurance, Washington, D. C."

Plaintiffs in error contend:

(1) That the judgment of the district court is contrary to the evidence, in that the purported will is a forgery.

(2) That the judgment is contrary to law, in that if the instrument be genuine, it is not a will, for it discloses no testamentary intent in directing the distribution, after death, of testator's property, and as such it should not have been admitted to probate.

Is the will a forgery? It is admitted the

signature is a facsimile of that of King B. Benson, but it is contended that the same was traced. It is urged that the remainder of the instrument is wholly false.

Section 1105, Compiled Oklahoma Statutes, 1921, provides:

"An olographic will may be proved in the same manner that other private writings are proved."

Mrs. Dowell testified that she was familiar with the handwriting of deceased and that the questioned document, to the best of her knowledge, was in his handwriting.

Mrs. B. G. Glass testified that she was a sister of deceased's wife; that Benson lived with them and that afterwards he wrote her; that she frequently saw his handwriting, and that the questioned document was in his handwriting; that on January 3, 1922, deceased asked for a tablet and pencil and that she saw him writing.

B. E. Morris testified he was a cousin of Ophelia Ladeen Benson; that he saw King B. Benson write frequently, and that to his best knowledge the document was in deceased's handwriting; that the signature looked coarser than the rest of the letter.

Mrs. Tom Proffit testified she was a sister to Ophelia Ladeen Benson; that she carried notes and frequently observed the handwriting of deceased; that she knew his handwriting; that the instrument, the date of the instrument, and the signature thereto were in the handwriting of King B. Benson; that the signature was a little coarser.

Roy Loomis testified that he saw Benson with some letterheads and some papers from the War Risk Insurance and that he wrote some names on a piece of paper; that he rather thought the questioned document was in his handwriting.

Ophelia Ladeen Benson, from her knowledge of her deceased husband's hnadwriting, testified that the document was in his handwriting.

While it is true all of these witnesses except Loomis were related to defendants in error, yet their testimony cannot be disregarded. By their relation they were familiar with his writing, and as to the failure of defendants in error to call bankers or business men with whom deceased dealt in writing, such witnesses were as accessible to one party as to another.

A. B. Benson, a brother of plaintiffs in error, testified that immediately after the death of his brother he searched deceased's clothing and that he found a letter in one of

the coats that had been written by the Bureau of War Risk Insurance, but on other letters; that he had not examined a coat in which a shot hole had been made.

Mrs. Dowell testified that immediately after the death of deceased she had locked some clothing of deceased in a trunk, the same being the clothing in which the letter had afterwards been found by her, and that the same had not been examined by anyone.

On March 20, 1923, deceased's wife caused to be filed in the county court a petition for letters of administration of the estate of King B. Benson, deceased, in which she alleged that he had died intestate. The document in question at that time had been mailed to the Bureau of War Risk Insurance in an effort to induce them thereby to change the beneficiaries in the policy.

Plaintiffs in error introduced E. J. Archimond, of Ft. Worth, Tex., who testified he was a certified public accountant. He qualified as an expert in handwriting by reason of having examined questioned documents in connection with his work as an accountant. He compared the questioned document and a signature of King B. Benson to a mortgage, and stated that in his opinion the purported will and the signature to the mortgage were not written by the same person, but that the signature to the letter "seemed to be a tracing," that the paper was broken by tracing. A like comparison was made by the witness between the body of the purported will in pencil and a letter written by Benson in ink and introduced by plaintiffs in error, and from the comparison the witness made deductions of numerous dissimilarities, and gave his opinion therefrom that the will was a forgery.

In the case of In re Will of Stires, 92 Okla. 276, 219 Pac. 695, the rule is laid down that:

"Where the probate of the will is contested and the testimony is conflicting as to the execution of the will, the judgment of the trial court will not be disturbed if there is any substantial testimony supporting the finding and judgment of the court."

In the case of In re Newhall's Estate (Cal.) 214 Pac. 231, it was held:

"A finding on conflicting evidence that a holographic will was written entirely by the testator will not be disturbed on appeal."

We find there was substantial evidence, though conflicting, that the instrument in question was written by deceased, King B. Benson, and we follow the rule stated in the Stires Case, supra.

We now consider the second contention.

In 40 Cyc. 1091, it is said:

"Any writing to take effect at death may constitute a will."

In 40 Cyc. 1130, the rule as to holographic wills is stated as follows:

"So as in the case with other wills, testamentary intent is necessary to the validity of an holographic will; but it has been held that a document may be good as an holographic will where expressing the testator's testamentary desire notwithstanding he did not consider it a will."

Thompson on Wills, p. 13, sec. 9, states:

"The true test of the character of the instrument is not the testator's realization that it is a will, but his intention to create a revocable disposition of his property to accrue and take effect upon his death and passing no present interest."

Black's Law Dictionary defines "testamentary" as follows:

"A paper, instrument, docket, gift, appointment, etc., is said to be 'testamentary' when it is written or made so as not to take effect until after the death of the person making it, and to be revocable and to retain the property under his control during his life, although he may have believed that it would operate as an instrument of a different character."

By the test of the whole instrument we think deceased expressed his intention and desire that his insurance policy after his death, which he expected momentarily, be paid to his heirs at law, his wife and baby. In re Wilson's Estate (Cal. App.) 225 Pac. 283; In re Estate of Skerrett (Cal.) 8 Pac. 181; Mitchell et al. v. Donohue (Cal.) 34 Pac. 614; Barney v. Hays et al. (Mont.) 29 Pac. 282; Stevenson v. Earl, 65 N. J. Eq. 721; Am. & Eng. Ann. Cas. vol. 1, p. 49.

In the light of the record, the insurance policy not being contained therein and neither are the terms of the policy presented either in pleading or evidence, it could not be successfully contended that the insurance policy, by its terms, vested an interest therein in the beneficiaries, but only one in the event of the death of insured, their interest is usually revocable. The letter was testamentary in character. Buffington v. Thomas, 84 Miss. 157, 36 South. 1039, 105 Am. St. Rep. 423; Alston v. Daws, 118 N. C. 202. 24 S. E. 15; Doughtery v. Holschelder, 40 Tex. Civ. App. 31, 88 S. W. 1113.

In 28 R. C. L. 288, the rule is stated that:

"Not only may assets forming part of the personal estate of the testator be devised, but the holder of a policy of accident insurance may, where the contract is silent as to the method of making such change, be accomplished by a duly executed will. Ellis v. Fidelity, etc., 163 Iowa. 713, 144 N. W. 574, L. R. A. 1915A, 109.

In Martin v. Stubbings, 126 Ill. 387, 18 N. E. 657, it is said:

"Most of the decisions seem to concur in holding that in case of mutual benefit societies the beneficiary named in the certificate of membership acquires no vested right to the benefit to accrue upon the death of the member until such death occurs. The member may, therefore, during his life time, exercise the power of appointment without limit of restrictions other than such as are imposed by the organic law of the society, or the rules and regulations adopted in conformity therewith." Society v. Burkhart, 110 Ind. 189, 10 N. E. 79, and 11 N. E. 449.

In 29 Cyc. 134, it is stated:

"The cases are not in accord as to whether a change of beneficiary may be effected by will of a member. In some cases it is held that the beneficiary may be thus changed, unless a different mode of substitution is prescribed by the laws of the society, in which case a substitution by will is invalid."

In Supreme Council Catholic Mutual Benefit Association v. Priest, 46 Mich. 429, 9 N. W. 481, the Supreme Court of Michigan held in respect to a beneficiary fund, not considered as a part of the property of deceased subject to his debts, that very clear and binding provisions must be shown to deprive a person of the right given him by the laws of the land to dispose of such a fund by his last will. Masonic Benevolent Association v. Bunch, 109 Mo. 560, 19 S. W. 25.

Underhill on Wills, p. 71, lays down the following:

"The cases which support the rule that the insured may dispose of the proceeds of a policy upon his life, though the beneficiary is specifically mentioned in the policy, are based upon the theory that the latter, during the life of the insured, has no vested right which the law protects. The majority of cases sustain this view and hold that in the absence of any special provision to the contrary between the insured and the insurer, the name of the beneficiary may be changed by the former without the consent of the beneficiary and without notice to him. This would seem to be the correct view, for if the insured may, by ceasing to pay premiums, deprive the beneficiary of the proceeds of the policy altogether, why may he not do so as well while keeping the policy alive by bequeathing the proceeds to another? The interest of the beneficiary under the policy assimilates closely to the expectation of a

legatee under a will. The legacy vests upon the death of the testator, but until that date it may be revoked or adeemed."

See In re Griest's Estate (Cal.) 18 Pac. 654; Lockett v. Lockett (Ky.) 80 S. W. 1152; Harden v. Harden (Ky.) 230 S. W. 307; Blethen v. Pacific Mutual (Cal.) 243 Pac. 431.

The judgment of the lower court is affirmed.

BRANSON, C. J., MASON, V. C. J., and LESTER, HUNT, CLARK, and HEFNER, JJ., concur.

PHELPS, J., dissents.

Note.—See under (1) 40 Cyc. p. 1691. (2) 29 Cyc. pp. 134, 135; 40 Cyc. p. 1049.