ANNIE D. MANSON *vs.* GRAND LODGE ANCIENT ORDER OF UNITED
WORKMEN OF THE STATE OF MINNESOTA.

June 20, 1883.

Mutual Benefit Society—Construction of Contract—Forfeiture—Rein-
statement.—The defendant, a corporation, conducted a system of insur-
ance upon the lives of its members, for the use of beneficiaries named
by the insured.  The insurance fund was maintained by assessments
made upon the surviving members.  The by-laws provide for a forfeiture
(suspension) of the rights of insured members who should be in default
in payment of assessments, but provide also that the delinquent member
may renew his right " at any time within a period of three months from
the date of the forfeiture thereof, provided he shall pay all assessments
that may have been made during that time."  *Held,* construing the by-
laws, that the payment indicated, to an officer designated to receive pay-
ment of assessments, was the only condition required of a delinquent
member to restore him to the rights from which he was suspended by his
default, and that no consent or action on the part of the defendant was
necessary to that end.  It was not necessary that payment be made at a
meeting of the lodge.

Same—Evidence of Defendant's Usage and Decisions by Directors.—
In an action upon the contract of insurance, proof by the defendant of
its custom and usage in these respects, and of the decisions of its officers
respecting the construction of the contract, *held* inadmissible.

Plaintiff, the person designated by Albert G. Manson in his certif-
icate of membership in defendant to receive the sum of $2,000, upon
his death, brought this action in the district court for Ramsey county,
to recover that sum.  The action was tried before. *Wilkin,* J., a jury
being waived, and judgment was ordered for plaintiff.  Defendant
appeals from an order refusing a new trial.

*A. L. Levi,* for appellant.

*O'Brien & Eller,* for respondent.

DICKINSON, J.  The defendant is an incorporation, having among
its purposes the creation of a fund for the benefit of its members
during sickness, and, in case of death, the payment of a stipulated
sum to such persons as may be designated, thus providing a plan

of life insurance for its members. The fund created for this purpose is under the control of and administered by the corporation. Upon the death of a member in good standing, the beneficiary whom he may have designated is entitled to receive from this fund the sum of $2,000. This fund is created and maintained by assessments upon the individual members of the lodge, each member being required to pay the sum of one dollar upon the death of a member, for the support of the fund. The by-laws provide that if this payment be not made within 20 days after notice, the delinquent member shall forfeit his right to the benefits of the fund. This notice of 20 days is made to terminate or expire on or before the 28th day of the month. The by-laws provide also for the keeping of a record-book of the assessments, by an officer of the lodge, called the financier, wherein the assessments shall be entered, "bearing date of the first meeting night, and not later than the 8th day of the month. On the third meeting night following the issuing of assessment notices, and on or before the 28th day of said month, he (the financier) shall furnish the lodge with the names of the members who are in arrears on such assessments, and the recorder shall place the same on the minutes of the lodge, and mark such certificates as suspended on the certificate register-book, affixing the date thereto. The financier shall, upon the receipt of any arrearages from beneficiary assessments, as provided for in sections 10, 11, 12, and 13 of this article, pay the same into the beneficiary fund, * * * and notify the lodge of the same, and the recorder shall so place it on the minutes of the lodge, and mark the certificate register-book, affixing the date thereto." Section 10 above referred to is as follows: "Any member who renders void his certificate by reason of non-payment of assessments thereon, may renew the same at any time within a period of three months from the date of the forfeiture thereof, provided he shall pay all assessments that have been made during that time."

Prior to the 25th day of September, 1878, one Albert G. Manson was a member of this order, entitled to the benefits of the fund referred to, and had designated this plaintiff as the beneficiary to whom payment should be made in the event of his death. A member of the order having died, and assessment having been made, Manson failed

within the 20 days prescribed to make payment, and on the 26th day of September his right to the benefits of the fund became thereby "forfeited" or suspended by the terms of the by-laws, and the proper entries were made of the fact in the records of the lodge. In October following, another death occurring and another assessment being made, Manson failed to make payment of the same as required, and on the 7th day of November he became delinquent in respect thereto, and the proper entry was made. On the 9th day of November, less than three months after the first delinquency, Manson being then on his death-bed, one Sewell paid to the financier, in behalf of Manson—who subsequently ratified the act—the amount of both the delinquent assessments due from Manson. The payment was not made at a meeting of the lodge, although meetings had been held weekly at which payments might have been made. Manson died November 14th. At the next meeting of the lodge after the payment, the financier presented the money to the lodge, but it was refused.

By this payment Manson became reinstated, and entitled to the benefits of the insurance fund. By the terms of the by-laws the only condition prescribed for the reinstatement of one whose delinquency had not existed more than three months was the payment of all assessments made during that time. Other sections of the by-laws, which we have not recited, make specific provision for reinstatement of those whose period of delinquency had exceeded three months; and in such cases the consent of the lodge to a reinstatement is made necessary. No such requirement is prescribed in cases like that before us. Payment might be made to the proper officer (the financier) out of lodge meeting as well as at a meeting of the lodge. While the fact of payment is to be reported to the lodge, and a record is to be then made, we see in the by-laws no provision which can be construed as limiting the making of payments to a period when the lodge is convened. By the terms of section 10, "any member who renders void his certificate by reason of non-payment of assessments thereon, may renew the same *at any time* within a period of three months, * * * provided he shall pay," etc.

Upon the trial the defendant sought to prove that it was required by the custom and usage of the order, and had been so decided by

those in authority in the order, that payments of arrearages be made at a meeting of the lodge, and that only upon such payments, and upon record being made in the books of the lodge, could delinquent members be reinstated. This evidence was properly excluded. The terms of the express contract of the parties, and not the custom or habitual mode of doing business, must determine the rights and duties created by that contract. The evidence was not admissible as a part of the contract, for the contract was complete in itself and in writing. It was not admissible to aid in interpreting the contract, for it needs not extraneous evidence for its interpretation. Its terms are not of doubtful or obscure meaning. The decisions of the order or of its officers were of no binding effect. Neither by the law nor by the terms of the contract were they invested with power to determine the construction which should be put upon the contract, or adjudicate respecting the contract rights or obligations of the parties.

Order affirmed.