Filed June 17, 1885.

No. 11,877.

BAUER v. SAMSON LODGE, KNIGHTS OF PYTHIAS.

PLEADING.—*Demurrer.—Plea in Abatement.*—A demurrer is not a plea in abatement, and matters in abatement may be pleaded after a ruling on demurrer to the complaint, unless the matter in abatement is as to the jurisdiction of the person of the defendant.

INSURANCE.—*Mutual Benefit Societies.—Duty of Members to Take Notice of By-Laws.*—A person who becomes a member of a secret mutual benefit society is bound to take notice of its by-laws.

SAME.—*Power of Mutual Benefit Societies to Limit Right to Sue.*—Mutual benefit societies may prescribe regulations as to procedure in enforcing claims, and may require appeals to superior bodies before instituting suit, but they can not entirely take away the right to invoke the aid of the courts in enforcing claims existing in favor of its members upon contracts.

SAME.—*Mutual Benefit Societies are Insurance Companies.*—A mutual benefit society which, for an agreed compensation, agrees to pay benefits to its members, is not a purely benevolent society, but is, in respect to the contract to pay benefits, an insurance company.

SAME.—*What By-Laws Will Limit Right to Sue.*—By-laws simply giving the right of appeal to a superior body, to which the mutual benefit society belongs, will not deprive a member of the right to sue; in order to have this effect the by-laws must positively require members to prosecute an appeal before resorting to the courts for redress.

Bauer v. Samson Lodge, Knights of Pythias.

SAME.—*Claims for Money.*—*Question of Policy and Doctrine.*—A member of a secret order which exercises the privileges and powers of a mutual benefit society, who sues for a benefit due him under a contract, occupies an essentially different position from one who presents a question of policy, doctrine, or discipline, and courts will entertain jurisdiction in the one case, but, as a general rule, not in the other.

CUSTOM.—A custom that a party shall not sue in a court of justice for money due him on a contract is not valid.

From the Clark Circuit Court.

*J. H. Stotsenburg* and *G. H. Voight,* for appellant.

*M. Z. Stannard, J. G. Howard* and *J. F. Read,* for appellee.

ELLIOTT, J.—The complaint of the appellant alleges that the appellee is a corporation, organized under the laws of Indiana; that it is a subordinate lodge, acting under a charter granted by the Grand Lodge of Knights of Pythias of the State of Indiana; that in accepting the charter the appellee agreed to act in obedience to the enactments of the Grand Lodge; that section four of article five of the by-laws of the Grand Lodge is as follows:

" Section 4. Every Knight who has been in fellowship for six months, incapacitated by sickness or other disability from attending to his usual business or occupation, shall be considered a beneficial member, entitled to receive such weekly benefits as the by-laws prescribe: *Provided,* The minimum sum of one dollar per week must be paid through said period of probation: *And further provided,* That his disability is not brought on by immoral conduct, and that he is in good standing; but any lodge may, by its by-laws, provide that no benefits shall be paid for the first week's sickness or disability."

That the appellee enacted a by-law prescribing that members who had been in fellowship six months when incapacitated by illness should receive five dollars per week as benefits; that appellant has been a member of the defendant lodge in good standing since the 1st day of March, 1880, and as such entitled to all the rights and benefits of a member; that on the 9th day of March, 1880, he became ill, and was thereby

incapacitated from attending to his usual business, and that his illness was not brought on by immoral conduct.

The appellant answered in abatement. The allegations of the plea are substantially these: That the defendant is a subordinate lodge of the Grand Lodge of the Knights of Pythias. of Indiana; that the appellant, when he became a member, pledged himself, by signing a written petition, that he would conform to the constitution, by-laws and regulations of the defendant; that, among the rules and regulations of the Supreme Lodge of the order, are the following provisions:

Article 1, section 1. "The Supreme Lodge is the source of all true and legitimate authority in the order of Knights of Pythias wheresoever established. It possesses original and exclusive jurisdiction and power, (1) To establish the order in States, Districts, Territories, Provinces, or countries where the same has not been engrafted. (2) To charter Grand Lodges and define the territorial extent of their jurisdiction. (3) To hear and determine all appeals from Grand and Subordinate Lodges when the same are properly brought before it, in accordance with the regulations of the order, and to provide by legislation for the enforcement of its decisions."

Article 7, section 1. " Grand Lodges exist by virtue of a charter of dispensation issued by authority of the Supreme Lodge. They shall conform to the regulations prescribed by the Supreme Lodge in accordance with this constitution, and shall, subject to the provisions hereof and right of appeal, have exclusive original jurisdiction over all Subordinate Lodges within their territorial limits, and over the members attached to the same."

Article 7, section 3. " Each Grand Lodge shall adopt a constitution for its own government and also a constitution for its subordinates, which constitution shall be in accordance with the provisions of this constitution and the laws made in pursuance hereof."

That more than ten years since the Supreme Lodge issued a charter to the Grand Lodge of Indiana, and that Grand

Lodge afterwards chartered the defendant as a subordinate lodge of its jurisdiction; that in the constitution and laws of the Grand Lodge of Indiana are the following provisions:

" Section 2. This Grand Lodge shall have jurisdiction over all lodges of Knights of Pythias within the State of Indiana.

" Section 3. It possesses the right and power (1) of granting charters, (2) of suspending or taking away the same for proper cause, (3) of receiving and hearing all appeals and of redressing grievances arising in lodges under its jurisdiction, (4) of enacting by-laws for its government and support: *Provided*, The same are not in violation of the laws of the Supreme Lodge."

Article 5, section 8. "After the installation of officers, the Grand Chancellor shall appoint the following committees to serve one year:

"(1) A committee of appeals and grievances.

"(2) A committee of law and supervision.

"(3) A committee of subordinate lodge constitution and by-laws.

"(4) A committee on state of the order.

"(5) A committee on finance and accounts.

"(6) A committee on subordinate lodge returns.

"(7) A committee on credentials.

"(8) A committee on mileage and per diem.

" Each committee shall consist of three members, except the committee on appeal and grievances, which shall consist of five members."

Article 9, section 4. " The committee on appeals and grievances shall hear all appeals and grievances from lodges or members of lodges referred to them by Grand Lodge or Grand Chancellor, and report their decisions with the utmost dispatch to the Grand Lodge or Grand Chancellor during its recess, but no member of this committee shall serve on any case of appeal from the lodge of which he is a member."

That these provisions of the constitution and by-laws of the order have been in force since the organization of the de-

fendant, and are still in force; that these provisions require a member aggrieved by the decision of a subordinate lodge to appeal first to the Grand Lodge of the State, and then, if dissatisfied, to the Supreme Lodge; that according to the usages and customs of the order that have " existed in said order since the time whereof the memory of man knoweth not to the contrary, grievances in the denial of benefits have always been redressed by subordinate lodges or on appeal;" that the plaintiff has not appealed from the decision of the lodge denying him benefits.

Prior to filing this plea the appellee demurred to the complaint, alleging for cause that it did not state facts sufficient to constitute a cause of action, and it is contended by the appellant that this precludes the appellee from pleading in abatement, and upon this contention arises the first question.

It is important to keep in mind the fact that the plea does not present the question of the jurisdiction of the person of the defendant, but presents the question of the right to maintain the action. The question, therefore, is very different from that which would arise if the defendant had demurred and then attempted to question the jurisdiction of the court over its person. As a general rule appearance waives the question of jurisdiction of the person, but here the defendant submits to the jurisdiction and contests the right of the plaintiff to maintain the action. It concedes jurisdiction of the person, but affirms that the action must abate, because the plaintiff has not taken such steps as enabled him to prosecute it.

Appellant's counsel assume that a demurrer is a plea in bar, and, proceeding upon this assumption, affirm that the case is within the rule that after pleading in bar the defendant can not plead in abatement. The validity of this argument depends entirely upon the correctness of the assumption on which it rests. This assumption can not be made good. Our statute expressly recognizes the difference between demurrers and answers, and the common law quite as fully recognized the difference between pleas and demurrers. In their nature they

are essentially different; a demurrer presents an issue of law, while an answer presents an issue of fact. Gould says : " But a demurrer to the declaration is not classed among pleas to the action—not only because it may be taken, as well to any other part of the pleadings, as to the declaration ; but also because it neither affirms nor denies any matter of fact, and is, therefore, not regarded as strictly a plea of any class; but rather as an excuse for not pleading." Gould Pleading, chap. 2, section 43.

Error can not be successfully assigned upon a ruling denying a motion to strike out part of a complaint.

One who becomes a member of an organization such as the Knights of Pythias is chargeable with knowledge of its laws and rules, and is bound by them. He can not be ignorant of them, nor can he refuse obedience to them, unless, indeed, they are illegal or require the performance of acts which the law forbids. *Simeral* v. *Dubuque M. F. Ins. Co.*, 18 Iowa, 319; *Coles* v. *Iowa State M. Ins. Co.*, 18 Iowa, 425; *Mitchell* v. *Lycoming M. Ins. Co.*, 51 Pa. St. 402; *Fugure* v. *Mutual Society of St. Joseph*, 46 Vt. 362. By-laws, not in themselves illegal and not requiring the performance of acts contrary to law, must, therefore, be deemed binding upon all persons who become members of such an organization as the Knights of Pythias, and the question is as to the existence and effect of the by-laws in this particular case.

There is some conflict of opinion as to the extent to which such an organization may go in restricting actions for benefits promised its members, some of the cases holding that it may prohibit actions at law altogether and make its own decisions conclusive; others holding that it may not materially restrict the right to sue. *Black, etc., Society* v. *Vandyke*, 2 Whart. 309; *Osceola Tribe, etc.*, v. *Schmidt*, 57 Md. 98; *Harrington* v. *Workingmen's Benev. Ass'n*, 27 Alb. L. J. 438; *Poultney* v. *Bachman*, 31 Hun, 49; *Lafond* v. *Deems*, 81 N. Y. 507; *Toram* v. *Howard Beneficial Ass'n*, 4 Pa. St. 519; *Anacosta Tribe, etc.*, v. *Murbach*, 13 Md. 91; *Dolan* v. *Court of Good Samaritan, etc.*, 128 Mass. 437.

The reasonable rule is, that such an organization may provide methods for redressing grievances and deciding controversies, and may compel members to resort to the prescribed method of procedure before invoking the power of the courts, but that it may not entirely prohibit members from suing to recover benefits accruing to them under the by-laws of the organization. Men voluntarily enter such organizations, and in becoming members subscribe to their laws, and if these laws make provision for trying controversies, the member aggrieved must pursue the course prescribed before resorting to the courts to enforce his claims. There is no valid reason why he should not be compelled to do what he has agreed, and the harmony and efficiency of such organizations require that all measures provided and required by their by-laws should be exhausted before appealing to the courts to settle the controversy. On the other hand, it would be unjust to permit such organizations to take from their members all right of action for money due them. Claims for money due by virtue of an agreement are unlike mere matters of discipline, questions of doctrine, or of policy, and are not governed by the same rules. A corporation which promises to pay a certain sum as benefits during a member's illness, in consideration of his payment of dues, is not a purely benevolent organization; it may be, and doubtless is, benevolent and charitable in a great degree, but it is not a benevolent organization in the sense of dispensing benefits without consideration. The consideration the order receives is the dues paid by the member, and in return it promises him benefits. In speaking of an order of a character similar to the Knights of Pythias, the Supreme Court of Massachusetts said: "The corporation is not a mere charitable society, but is rather in the nature of an association for the mutual insurance of its members against sickness or accident. If it refuses to perform its contract contained in the by-laws, the member who is injured may have recourse to the proper courts to enforce the contract." *Dolan* v. *Court of Good Samaritan, etc., supra.*

Our own decisions have recognized a like doctrine as applicable to the life insurance features of such organizations. *Elkhart Mutual Aid, etc., Ass'n* v. *Houghton,* 98 Ind. 149; *Supreme Lodge, Knights of Pythias,* v. *Schmidt,* 98 Ind. 374.

It is not within the power of individuals or corporations to create judicial tribunals for the final and conclusive settlement of controversies. In a case in principle the same as the present, it was said: "To create a judicial tribunal is one of the functions of the sovereign power; and although parties may always make such tribunal for themselves, in any specific case, by a submission to arbitration, yet the power is guarded by the most cautious rules. * * * It would hardly accord with this scrupulous care to secure fairness, in such cases, that parties should be held legally bound by the sort of engagement that exists here, by which the most extensive judicial powers are conferred upon bodies of men whose individual members are subject to continual fluctuation." *Austin* v. *Searing,* 16 N. Y. 112.

It is to be noted that agreements to submit a matter to arbitration are valid when made after the specific controversy has actually arisen, and not when made in advance, certainly not when the agreement provides that one of the interested parties shall be the sole arbitrator. The weight of authority is very decidedly against the power of parties to bind themselves in advance that a controversy that may possibly arise shall be conclusively settled by an individual or a corporation, and to that doctrine this court is committed. *Kistler* v. *Indianapolis, etc., R. R. Co.,* 88 Ind. 460; *Insurance Co.* v. *Morse,* 20 Wall. 445; *Mentz* v. *Armenia F. Ins. Co.,* 79 Pa. St. 478 (21 Am. R. 80); *Wood* v. *Humphrey,* 114 Mass. 185.

As all persons having a money demand against an individual or a corporation have a right to resort to the courts in the first instance, when payment is withheld, to coerce payment, that right must exist unless it clearly appears that it has been abridged or surrendered. In the case before us the answer concedes the right to the benefits claimed, but affirms

that an action can not be maintained because the claimant has not taken the steps which must precede the assertion of the claim in a court of justice. In order that this general right, a right possessed by all citizens, should be curtailed, it must clearly appear that he to whom the money is due, has agreed that it may be abridged. One who asserts a claim to money due upon a contract, occupies an essentially different position from one who presents a question of discipline, of .policy, or of doctrine of the order or fraternity to which he belongs. All the decisions, from first to last, recognize a broad distinction between the two classes of cases, and the one before us belongs to the class where property rights are involved, and is a member of a class cognizable by the courts.

The policy of the law, as declared in our Constitution and by our decisions, is to freely open the courts to those who seek money due them upon contract, and the party who asserts that the right to invoke the aid of the courts has been curtailed, must show a clear agreement abridging the right. These principles necessarily lead to the conclusion that a corporation which has agreed to pay pecuniary benefits to one of its members can not successfully resist an appeal to the courts without showing an express or implied agreement that before making such an appeal the members shall pursue a course of procedure prescribed by the laws of the organization.

In the case in judgment there is a clear right to the benefits claimed, for so the by-laws provide, and where there is a right there is a remedy. If there is a remedy it is the usual one, unless by a legal contract the parties have otherwise agreed; here the usual remedy, open and free to all citizens having a just demand, is an ordinary action at law, and the question narrows to this, has the claimant abridged his remedy by contract? We find nothing in the by-laws which can be deemed a partial or a total surrender of his right to enforce his contract in the usual method. It is true that there is a general right of appeal provided for, but there is no stipulation that the claimant of benefits shall appeal; and, if we

are correct in our reasoning, there is no abridgment of his right to pursue the usual remedies. In order to abridge this right there must be a stipulation to that effect. Men do not lose their legal right to enforce their contracts unless they have yielded it up by agreement. The provision that an aggrieved party may appeal is permissive; it does not wrest from him the right conferred upon him by law. If a man has a legal right, and the corporation of which he becomes a member adds another, that of appeal to its superior governing bodies, the added right is merely cumulative, it is not exclusive; positive words only can take away an existing right. Conferring a right to pursue a given course does not destroy an existing right; in order to destroy such a right proper limiting words must be employed. Here there are no limiting words; there is nothing that limits the general right to sue in the courts, and a right such as this can not be taken away without a clear agreement surrendering it. If it had been the intention to require members to surrender their right to sue at once upon the breach of the contract, and to compel them to first appeal to the grand bodies of the order, it would have been easy to so declare; but there is no such declaration, and, therefore, no agreement taking away the right to sue for the enforcement of the contract which the claimant possessed by virtue of the law of the land.

The right to sue is one given, as we have seen, by law, and no custom can be good which is contrary to law. A custom that a party having a claim for money due upon contract may not pursue the usual remedies provided by law, is not valid. *Manson* v. *Grand Lodge, etc.,* 30 Minn. 509; *Thompson* v. *Insurance Co.,* 104 U. S. 252; *Franklin Ins. Co.* v. *Humphrey,* 65 Ind. 549 (32 Am. R. 78); *Spears* v. *Ward,* 48 Ind. 541; *Wallace* v. *Morgan,* 23 Ind. 399.

The court below erred in overruling the demurrer to the plea, and the judgment must be reversed.

Filed June 13, 1885.