LORIN E. LILLIE v. THE BROTHERHOOD OF RAILWAY TRAIN-
MEN, Appellant.

Benefit Associations: RIGHT TO SUE AT LAW. Where a brotherhood
member's disability claim was referred to certain officers, and
1 disallowed by the grand lodge on appeal, in acordance with the
provisions of the order's constitution, which did not make such
2 disallowance final, he was not deprived of his right to sue the
order at law.

DEFENSE OF LACK OF GOOD STANDING: *Burden of proof.* Where an
action is brought by a member of a brotherhood order against
the order for indemnity for disability, the constitution of which
order provides that the same shall be paid to disabled members
3 in good standing, failure of such member to prove his good
standing will not defeat his claim, in the absence of evidence
to the contrary, since the burden of proof is on the defendant
to show that plaintiff was not in good standing.

EVIDENCE: RULES OF RAILROAD. A member of a brotherhood entitled
to benefits for total incapacity for duty in any department of
the train or yard service, sued to recover such benefits after
5 his discharge from service for impaired eyesight. *Held,* that
the rules of such railroad as to physical examinations, which
were the rules applied to him, and evidence that many other
railroads required such examination, were admissible to make
out a *prima facie* case of disability.

*Proof of disability.* Evidence showing that plaintiff's eyesight was
so impaired that he could not see signals at a reasonable dis-
tance, or distinguish colors, is admissible in an action against
6 a beneficial association for an indemnity for disabilities inca-
pacitating him for duty in any department of the train or yard
service, since such deficiency was clearly fatal to efficient ser-
vice in moving trains.

INSTRUCTIONS: *Total disability.* In an action by a member of a
brotherhood order, the constitution of which provided that a
certain indemnity should be paid to members whose disabilities
are of such nature as to totally incapacitate them "from the per-
4 formance of duty in any department of the train or yard ser-
vice," and to recover his indemnity, an instruction which uses
the words of the constitution in stating grounds on which re-
covery may be had is not insufficient, as failing to show whether
plaintiff must be incapacitated from service in some one or all
departments of the service.

*Cumulative Instructions.* An objection to an instruction for failure
to charge on particular issues is not well taken, where such
4 issues are fully covered in other instructions.

*Appeal from Boone District Court.*—HON. S. M. WEAVER, Judge.

SATURDAY, MAY 25, 1901.

ACTION to recover upon a certificate of insurance against disability. There was a jury trial, verdict and judgment against defendant, and it appeals.—*Affirmed.*

*Foster & Carlock* and *Robert F. Dale* for appellant.

*Dyer & Stevens* for appellee.

WATERMAN, J.—Plaintiff was in the employ of the Chicago & Northwestern Railway Company as a brakeman. His eyesight became so much impaired that he was discharged from his position, because of unfitness to longer perform the services required. At this time he held a certificate issued by defendant which, by its terms, entitled him to "participate in the beneficiary department, class C, of said brotherhood to the amount set forth in the constitution thereof, which amount, in the event of his total and permanent disability, shall be paid him or at his death shall be paid to Sadie M. Lillie, his wife, if alive; if not, to the executors or administrators of said member in trust for, and to be forthwith paid over to his heirs at law." The indemnity for class C, as provided in the constitution, is $1,200; and we must resort to that instrument, also, to ascertain what disabilities are within the risk assumed. Article 37 provides "for the payment of said sum upon such member's death, or upon his becoming totally disabled, within the meaning of section 44," and that section is in these words: "Any member in good standing suffering the loss of a hand at or above the wrist joint, or the loss of a foot at or above the ankle joint, or the loss of the sight of both eyes, shall be considered totally and permanently disabled, and shall receive the full amount of his beneficiary certificate or certificates. Other

claims for total disability shall be referred to the grand master, first vice grand master, and grand secretary and treasurer, who shall decide as to whether or not the disability is of such a nature as to totally and permanently incapacitate the claimant from the performance of duty in any department of the train or yard service; and, if the claim is approved by them the claimant shall receive the full amount of the beneficiary certificate or certificates held by him." It is not claimed that plaintiff's disability was ever allowed by the tribunal mentioned in this section as total, or as coming within the terms of the policy. It will be noticed that certain specific injuries are described as insured against, and no other injury is covered by the policy, unless so declared by the officers mentioned. We state this proposition because, especially, of some things said on behalf of appellee. We do not think, however, that any such question as that the injury complained of was not covered by the policy, because the officers named did not so find, was presented to the trial court by appellant. Indeed, appellant, in argument, concedes that the disability is covered by the policy, and his only claim on this branch of the case is that plaintiff did not pursue the proper course in asserting his rights. It is this concession which distinguishes the present case from that of *Eighmy* against this same defendant, 113 Iowa, 681.

I. The first complaint is made of the eighth instruction given by the court, which is as follows: "The constitution of the defendant society provides that a member making a claim for indemnity on account of total disability shall present his proof of such disability, and that the question of his right to receive payment shall be referred to a board of officers of the grand lodge, and further provides, if such claims are disallowed by the board, the claimant may appeal to the grand lodge in session. This provision does not deprive the plaintiff of his right to sue the claim in a court of law. But it was his duty before

beginning such suit to first lay his claim before the proper officers or board of defendant, and give it opportunity to pay without further litigation; and, if he failed to show that he made such proofs before commencing this suit, he cannot recover." Accepting plaintiff's disability, as we must, in view of the record, as being covered by the policy, this instruction announces a correct rule of law. The facts are that plaintiff's claim was presented to defendant, and on its disallowance he says he took an appeal to the grand lodge. He is not contradicted on this point. Such being the case, plaintiff is certainly not deprived of his right to sue at law. There is no provision of the constitution which attempts to make the decision of the lodge tribunal a finality, as in *Anacosta Tribe of Redmen v. Murbach,* 13 Md. 91 (71 Am. Dec. 625), and kindred cases, except article 44; and, as we have said, no question is made under that provision. Apparently, plaintiff had exhausted his remedies within the order. Under the authorities cited by appellant, he was then entitled to proceed in the courts. Niblack, Mutual Benefit Societies, section 311 *et seq.* See, also, *Bauer v. Lodge,* 102 Ind. 262 (1 N. E. Rep. 571); *Dolan v. Court Good Samaritan No.* 5910, *A. O. O. F.,* 128 Mass. 437. There are cases, like *McNamara v. Harrison,* 81 Iowa, 487, and *Ross v. McArthur,* 85 Iowa, 203, in which it is held valid to make the decision of a third person a condition precedent to the right to sue. But there was no attempt here to do this, so far as is claimed.

II.   It is next charged that there was a failure to show that plaintiff was in good standing in the order when his disability occurred. We do not think this claim justified, under the evidence. But, had plaintiff introduced no evidence on this subject, such failure would not, alone, operate to defeat his claim. His good standing would be presumed. The burden of showing a want of it would rest on defendant. *Tobin v. Society,* 72 Iowa, 261.

III.   The fourth instruction given by the court is criticised as not clearly stating whether the disability must have

incapacitated plaintiff from service in some one or in all the departments of train or yard service. The court uses the identical expression that is found in article 44 of defendant's constitution. We believe the jury must have understood it as meaning what it says—that plaintiff was required to show himself incapacitated for any (*id est,* all) of such duties. It is also said that the court in this instruction does not say the disability must be permanent. This is, however, fully stated in several other parts of the charge—particularly in the fifth instruction. What is just said will cover the grounds of complaint urged against the fifth instruction, for that also is made the subject of attack.

IV.   The rules of the Chicago & Northwestern Railway Company as to physical examinations were introduced in evidence over defendant's objection. These were the rules applied to plaintiff, and he introduced evidence to show that many other roads required physical examinations. We do not think there was error in this action of the court. We are not impressed favorably with the argument of appellant on this matter. It seems to be claimed that plaintiff, in order to recover, must first show by substantive proof that there was no railroad anywhere which would employ him in its train or yard service. We think he made a *prima facie* case when he proved that the railway company for which he worked, as a measure of safety to him and others, discharged him on account of his disability.

V.   The evidence offered to show plaintiff's disability and its character was admissible and sufficient. It was shown that his eyesight was so impaired that he could not see signals at a reasonable distance, or distinguish colors. Manifestly, these are deficiencies fatal to efficient service about moving trains. While no one road could make an arbitrary rule, without foundation in reason, fixing a requirement for service that would affect defendant's contract, yet such a disability as this, everyday

experience teaches, would necessarily destroy one's ability to perform yard or train duties.

There are several more assignments of error, but they are covered by what we have already said. We have examined this case carefully, and are convinced that on the trial defendant's rights were properly guarded. The judgment must stand.—AFFIRMED.