## BENEFICIAL ASSOCIATIONS.

[Circuit Court of Mahoning County.]

ANNA EARLEY v. JAMES M. EARLEY AND THE SUPREME TENT, K. O. T. M.*

Decided, March Term, 1902.

*Knights of Maccabees—Benefit Certificates Issued by—Who May Become Beneficiaries—"Dependent" Signifies a Class—Irregularities in Change of Beneficiary—Held to Have Been Waived—Interest of Beneficiary in a Mutual Benefit Certificate Not Vested—And Not Ground for Complaint Where a Change is Made—Findings of Fact by the Court.*

1. The word "dependent" as used in the benefit certificates of the Knights of Maccabees signifies a class by itself, and does not qualify the words "mother, father, sister, brother" which follow.
2. A change in the beneficiary under a policy in a mutual benefit association is not rendered invalid by reason of irregularities, where the change is made substantially as provided for in the laws of the association, and to its full satisfaction and that of the insured, and the highest officers of the association have knowledge of the irregularities.
3. In a finding of facts relative to a change of beneficiary, the material fact to be found was that the second certificate changing the beneficiary was issued, and every intendment is in favor of its regularity.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.

This action in the common pleas court was by the Supreme Tent of the Knights of the Maccabees of the world against Anna Earley and James M. Earley. The court made special findings of fact and conclusions of law. No objection is made to the findings of fact, the complaint being by plaintiff in error that the court erred in its conclusions of law from the facts. The facts, as found by the court, that are material to the controversy are substantially as follows:

Section 174 of the Supreme Tent of the Knights of the Maccabees is as follows:

* Affirmed by the Supreme Court without report, December 15, 1903.

"Section 174.  No life benefit certificate shall be made payable to any person other than the wife, husband, children, dependent, mother, father, sister, brother, aunt, uncle, nephew, niece, cousin, step-child, step-parent, half-sister or half-brother of the member, nor can any such certificate be assigned, willed or in any manner transferred by a member to any other person than the above, and no transfer of a certificate will be binding on the order, unless the member shall make such change as hereinafter provided, and consent thereto is given by indorsement thereon by the supreme record keeper.  In case a member desires to change the beneficiary named in his certificate, or reduce the amount thereof, he shall make a written request therefor and deliver the same with his certificate and the sum of fifty cents to the record keeper of his tent.  On receiving such written request and the fee therefor, the record keeper shall forward the same to the supreme record keeper, who shall thereupon issue a new certificate bearing the same number as the one surrendered, provided there shall be no law restricting such privilege.  Provided, further, that in case the certificate is lost or in the possession of another who refuses to deliver the same to the member, in such case he shall make an affidavit setting forth the fact and forward the same with his request for change to the supreme record keeper."

The principal officers of the corporation are supreme commander, supreme record keeper and supreme finance keeper, whose official positions shall correspond to that of president, secretary and treasurer, respectively.  Members must pay assessments monthly, and failing to do so, shall stand suspended from all benefits of the order until regularly reinstated.

Lewis S. Earley, husband of Anna Earley, became a member of the Knights of Maccabees at Beloit, Mahoning county, Ohio, where the subordinate tent was located, February 18, 1893, and upon the same date, at his request, his life benefit certificate for the sum of $2,000 was made payable to his wife, Anna Earley, which was immediately delivered by him to her.  That said Lewis S. Earley and Anna Earley lived together as husband and wife at Beloit aforesaid to May 30, 1900, and said certificate was kept in the bureau drawer at their residence, the location of which was known to both, and was the last place it was known to be.  Afterwards, on March 27, 1899, he made a written request for a change of beneficiary from his said

wife, Anna Earley, to his father, James M. Earley. This written request was made upon the regular blank of the tent, and in which written request he set forth, "That the certificate 'in favor of his wife is in the possession of his wife and she would not return the same; that he wished to change the beneficiary on account of disagreement which will be followed by separation. You will understand this, as there are many things too delicate to mention here, and he therefore could not surrender the same for cancellation." This written request containing said statement, also setting forth that he was a member in good financial standing, was delivered to the record keeper of his tent, and was duly authenticated by the officers and seal of his tent and forwarded by the record keeper of his tent to the supreme record keeper. The supreme record keeper received the same and issued a new certificate dated March 27, 1899, of the same number as the original one, designating the father, James M. Earley, as the beneficiary. The new certificate was signed by the supreme commander and supreme record keeper of the supreme tent, and the seal of the supreme tent attached in accordance with the law of the supreme tent, and sent by the supreme record keeper to the record keeper of the Beloit tent, and was countersigned by the commander and record keeper of his tent, and delivered to the said Lewis S. Earley, who delivered it to his father. When the new certificate was issued by the supreme record keeper he stamped upon the written request of Lewis S. Earley for a change of beneficiaries, "original canceled and new certificate issued March 31, 1899." No affidavit of Lewis S. Earley was sent with the request in writing to the supreme record keeper that the certificate in favor of Anna Earley was in possession of another, neither was any such affidavit made by Lewis S. Earley. Lewis S. Earley and Anna Earley lived together until May 30, 1900, when they separated. At no time did the said Lewis S. Earley ask his wife to surrender such certificate, nor did he give her any information that he intended to change the beneficiary, nor did she have any information or knowledge of any change or intended change of the same until after the death of said Lewis S. Earley. Anna Earley, the wife, continued in possession of the certificate designating her

as beneficiary until July or August, 1900, when she lost the same.

Lewis S. Earley died on November 16, 1900, when she, the said Anna Earley, made demand upon the Knights of Maccabees for the payment to her of the $2,000, the death benefit. The father, James M. Earley, also made demand for the payment to him of the death benefit, under the certificate designating him as beneficiary. Such is substantially the statement of fact as found by the court.

The action of the Supreme Tent of the Knights of Maccabees was in equity to determine who was entitled to the fund, and was in the nature of a bill of interpleader—it bringing the money into court and setting forth in its petition that it had no interest in the controversy farther than to protect itself and see that the proper party obtained the fund. The court of common pleas found that the father, James M. Earley, was entitled to the fund under the second certificate, and rendered judgment in his favor.

Three grounds of error are urged by counsel for plaintiff in error.

First. That the father could not be a beneficiary under the laws of the supreme tent.

Second. That defendant in error practiced a fraud upon the supreme tent in the statement that the certificate was in the possession of the wife and that he could not obtain it.

Third. That the change of beneficiary was not made in accordance with the laws of the supreme tent.

Could the father be a beneficiary?

Section 174 provides as to who may be beneficiaries—wife, husband, children, dependent, mother, father, sister, brother, etc.

It is contended that all the classes after dependent are qualified by the word *dependent,* and that the clause should be read, dependent mother, dependent father, etc., while on the other hand it is claimed that dependent signifies a class of itself. We think the latter is the correct construction. There is nothing whatever to indicate that the word should be read as an adjective or qualifying word. The comma after it, while not in any sense conclusive, very strongly shows that it was intended as a noun, the name of a class. The position of the word is significant.

It follows immediately after the classes, wife, husband and children, showing, as we think, to intend a class of persons that would be connected with the immediate family or household, as foster children, grandchildren, or others adopted into the household as part of the immediate family and dependent upon the member for maintenance and support.

The case of *Supreme Council Cath. Benevolent Legion* v. *McGinness*, 59 Ohio St., 531, has some bearing upon the case. The laws of the Benevolent Legion provided that its particular business, among other things, was "to afford moral and material aid to its members and their dependents, by establishing a fund for the relief of sick and disabled members and a benefit fund from which, on satisfactory evidence of the death of a member who shall have complied with all its lawful requirements, a sum not exceeding $5,000 shall be paid to the family or dependents of each member, as he shall have directed." In that case a brother was made a beneficiary, and it was claimed that he was included in the word "family," it not being averred that he was a dependent, but the court held that could not be so; that while the word "family," in its general significance, would include a brother, yet as used in the laws of the Benevolent Legion it was in a limited sense, and only included those who were the immediate members of the family and dependent upon the member. So here the word "dependent" no doubt was intended to signify a class in the family dependent upon the member, and the after designations enlarged the field as to beneficiaries.

While Section 175 of the laws is not included in the findings of fact and is not considered by the court, yet it shows conclusively that that was the intention of the supreme tent in Section 174. It says:

"Section 175. In the event of the death of the beneficiary or beneficiaries named in the certificate of membership before the death of such member, if no other designation be made, the benefit shall be paid first to the widow, or widower, if living; if no widow or widower, to the children; if no children, to the dependents; if no dependents, to the mother; if no mother, to the father; if no father, to the brothers and sisters, share and share alike."

We all are, therefore, of opinion that the word "dependent" in Section 174 signifies a class, and that the father was a proper beneficiary.

Was the second certificate in which the charge was made, secured by a fraud practiced upon the supreme tent by Lewis S. Earley?

The statement in the written request for change of beneficiary by Lewis S. Earley was that a disagreement had arisen between him and his wife which would be followed by separation. The court found that they did afterwards separate. It also found that Lewis S. Earley at no time asked his wife to surrender this certificate. Under these circumstances we fail to see that any fraud was practiced upon the supreme tent. He set forth in his written request that the certificate was in the possession of his wife, and that she would not return it to him. That all might be true without any request. A husband could be fully satisfied as to what his wife would do respecting such a matter, without a distinct request to return the certificate, and the supreme tent was fully informed by Lewis S. Earley as to all the facts in the written request. It seems to us, from the findings of the court, that he acted fairly and honestly in the matter, and that no fraud was committed.

Was the substitution of the father, as beneficiary, for the wife, legally made; that is, was the first certificate actually canceled by the issuing of a new certificate under the laws of the supreme tent and the law governing and controlling such cases? In other words, which certificate, as between these contesting parties, at the death of Lewis S. Earley, legally existed—the one in which Anna Earley was beneficiary or the one in which James M. Earley was beneficiary?

The supreme tent, by the pleadings, has no interest in the matter. It takes sides with neither party. It is a mere stakeholder, and says to the court, decide between the parties as to who is entitled to the fund.

It is claimed on behalf of the plaintiff in error, upon this branch of the case, that she is entitled to the fund for the reason that the second certificate was not issued in accordance with Section 174 of the laws of the supreme tent, in this, that no affi-

davit was made and forwarded by Lewis S. Earley to the supreme tent with the written request for a change of beneficiaries, setting forth that the original certificate was in the possession of another who refused to deliver the same to him, and furthermore, he did not deliver to the record keeper of his tent fifty cents with his written request for a change of beneficiary, to be forwarded to the supreme record keeper with his written request.

Was this indispensably necessary? Here we are divided; a majority of the court think it was not, while the other member thinks it was. At this point, however, one suggestion should be made, which will be referred to hereafter, and that is, there is nothing in the pleadings or findings of fact showing that the fifty cents was not delivered and forwarded.

It should be observed at the outset upon his proposition that the manner of the transfer was perfectly satisfactory to the highest officers of the corporation, the supreme tent, to-wit, the supreme commander and the supreme record keeper, who correspond to the offices of president and secretary of ordinary corporations. They received the written request for the change of beneficiary, with full knowledge that it was not verified and that, no affidavit accompanied it; also that the fifty cents was not paid (if as a fact it was not paid) and issued the new certificate and canceled the old one, and all through the litigation in the lower court made no objection, and are not now objecting to the validity of the new certificate.

This brings us to the question, what are the legal rights of the beneficiary under such certificates.

It is well settled that the distinction between certificates of beneficial societies and policies of life insurance, in request to changes of beneficiaries, is very marked. Indeed, the law respecting life insurance has very little, if any, application to beneficial societies, and especially upon this particular question. *State* v. *Protection Association of Ohio,* 26 Ohio St., 19; *State* v. *Life Association,* 38 Ohio St., 281; Benefit Societies & Life Insurance by Bacon, Section 304, 305 and 306.

Whatever rights beneficiaries have in life policies they have by virtue of the contract between the insurance company and the assured. In the case of an ordinary insurance policy the

right of the beneficiary in the policy and to the amount to be paid upon the death of the assured, is a vested right, vesting upon the taking effect of the policy. That right can not be defeated by the separate or the combined act of the insured and the company, without the consent of the beneficiary.'' *Harley* v. *Heist,* 86 Ind., 195 (44 Am. Rep., 285) ; *Damron* v. *Mutual Life Ins. Co.,* 99 Ind., 478.

The converse is the rule respecting beneficiaries in mutual benefit associations.

''For many, and indeed for most purposes, mutual benefit associations are insurance companies, and the certificates issued by them are policies of life insurance governed by the rules of law applicable to such policies. There are, however, some essential differences usually existing between the contract evidenced by such certificate and the ordinary contract of life insurance. The most usual difference is the power on the part of the assured in mutual benefit associations to change the beneficiary.'' *Presbyterian Mutual Benefit Association Fund* v. *Allen,* 7 N. E. Rep., 317 (106 Ind. 593) ; *Elkhart Mut. Aid Association* v. *Houghton,* 2 N. E. Rep., 763 (103 Ind., 286) ; *Bauer* v. *Sampson Lodge,* 1 N. E. Rep., 571 (102 Ind., 262) ; Bacon Benefit Societies, Sec. 304.

In *Richmond* v. *Johnson,* 10 N. W. Rep., 596 (28 Minn.. 449), the court said:

''Here is not an ordinary contract of insurance made between an insurance company and another person, the rights of the parties to be determined exclusively by the policy. The right of Charles H. Richmond and of any one claiming through him, depend not on the certificate alone, but rather on his membership in the association; and such rights were defined and controlled by its constitution and by-laws.

''In *Barton* v. *The Providence Relief Association,* 3 Atl. Rep., 627 (63 N. H., 535) ; the Supreme Court of New Hampshire says, p. 628:

''The power of appointment is the one thing in the contract which was given to the member, and over that power no other person has any control. The right of its free exercise requires its continuance until death. The appointment by Barton of the plaintiff his wife, to the benefit, at the time he became a member was no bar to his right to appoint another or others by a subsequent change. She was no party to the contract, and acquired

no vested right in the benefit. The contract was between Barton, her husband, and the defendant, which on the performance of the conditions of membership, agreed to pay the benefit to any person whose name might appear by his entry on the record book or the face of the certificate at his death. The power of appointment being free and continuous, no right to the benefit could vest in the plaintiff until it became certain that her name remained in the certificate, as the beneficiary, at her husband's death. If by the entry of her name as beneficiary the plaintiff acquired any interest whatever in the benefit, it was only a contingent interest which her husband had the power to defeat, and which he has defeated by exercising the power of substitution in the appointment of other beneficiaries."

"It is strenuously insisted that the contract was of such a character that it could not be assigned even equitably by Clark Swift. We think otherwise. Neither the wife nor children had any vested interest, conditional or otherwise, in this insurance money so long as Clark Swift lived and owned and controlled this contract. The contract was between the association and himself. The children paid nothing for their supposed interest. It was a contract which was capable of being rescinded by Clark Swift with the assent of the association."

In the case of *Anthony* v. *Massachusetts Benefit Association,* 33 N. E. Rep., 577, 578 (158 Mass. 322, 324), it is said:

"The distinction between a policy of insurance and a certificate of a beneficiary association was pointed out by Mr. Justice Devens in *Marsh* v. *American Legion of Honor,* 21 N. E. Rep., 1070 (149 Mass., 512, 515), and it was said: 'All that a beneficiary has during the lifetime of the member who holds the certificate is a mere expectancy which gives no vested rights in the anticipated benefit, and is not property, as, owing to his right of revocation, it is dependent upon the will and pleasure of the holder.'"

The opinion in this last case is sustained by Mr. Justice Lathrop by a number of cases cited in the report. It is unnecessary to quote further from the authorities to sustain this proposition. Mr. Bacon, in his work already referred to, in a note to Section 306, gives a large number from nearly all the states of the union.

The foregoing citations show the distinction, in the law, respecting life insurance policies and beneficiary certificates and

establish, as we think, beyond controversy, that the beneficiary named in a certificate of a beneficial society has no vested right in the anticipated benefit; it is not property, but a mere expectancy which may or may not ripen into property. This arises from the fact that the member, under the law of such societies, may change the beneficiary at any time by and with the consent of the society; therefore, during the life of the member, the expectancy may at any time be destroyed and the expectation blighted. It is a mere gratuity on the part of the member to be enjoyed at his death, provided he does not change his mind. It could not be hypothecated; it would not be assets in a bankrupt court; it has no value in the market; it could not be subjected to the payment of the debts of the beneficiary; indeed, it has no value whatever until the death of the member, for the reason, as we have said, it may be entirely annulled at any time during his life, by the member, with the consent of the society. We do not mean by this that the beneficiary has no interest. An expectancy is an interest which can only be taken away in a lawful manner. A beneficiary under a will has an interest which continues until it is revoked in a manner provided by law. Such, we understand, to be the holding in *Charch* v. *Charch*, 57 Ohio St., 561. In that case the court held:

"Where a member of a beneficial association organized under Section 3630, Revised Statutes, has caused the beneficial certificate issued by the association upon his life to be made payable to his wife, such member can not change the beneficiary except in the mode pointed out by the by-laws of the association. And where such by-laws provide that a change of beneficiary can be made only by surrender and issue of a new certificate, such change can not be made (the wife being in life) by will."

Spear, J., in the opinion on page 578, says:

"By the undisputed facts it is established that the certificates in question were issued to the wife and so remained. Under the law, her interest in them, while not a vested one during the husband's life, was such as he could not change by testamentary disposition. When these laws provide, as those of these two orders do, a method by which the beneficiary may be changed, that method must be pursued, and where no change is thus made, the company's promise to pay runs only to the person named in the certificate."

This is but the statement of a familiar legal principle, that where a power is granted, that power can only be exercised in the manner provided for in the instrument creating the power and can not be exercised in any other manner. There are a few cases that hold to a different rule and decide that the member may change the beneficiary at his will and in any manner, irrespective of the laws of the association. That is the holding of the cases in Texas and of the cases that follow the Texas rule, but they are few in number and not founded on reason. Such a rule would be almost subversive of beneficial insurance. The society would never know until the death of the member, who were its beneficiaries, if the member could change the beneficiary without the concurrent act of the society.

This provision, however, is for the benefit of the society and not of the beneficiary, and the manner of its enforcement is for it alone to determine. The beneficiary is in no manner a party to the contract; the agreement respecting the manner of change is between the society and the member. All the interest or right the beneficiary has is that the change shall be made according to the laws of the society, to the satisfaction of the society and member, and not contrary to the law of the land, and the organic law of the society. The insured could surrender the benefit certificate at any time.

How much of the rule shall be insisted upon and how much waived is a matter alone for the determination of the society. No notice whatever is required to the beneficiary of the intended change; he or she has no right to be heard or offer any objection. In this case, Section 174 of the laws of the supreme tent shows that conclusively. The whole theory of the system of insurance by beneficial societies establishes this proposition; it is the poor man's system by which he provides a gift for the benefit of those depending upon him to go to them at his or her death. This is not only in accordance with principle, but is supported by an almost unbroken line of authorities. Bacon Benefit Societies, Section 308; Niblack Benefit Societies, Sections 218 to 223, inclusive, and authorities therein referred to.

I will refer to but a few. In Section 308, at the outset, Mr. Bacon says:

"Although the rule is settled that change of beneficiary must be made in the manner prescribed by the laws of the society with some exceptions, it is also now equally well settled that the society may waive compliance with the required formalities."

In *Manning* v. *Ancient Order of United Workmen*, 5 S. W. Rep., 385, 386 (86 Ky., 136), the laws of the order provided that a member might at any time change the beneficiary by revoking the first designation and designating a new beneficiary in a form given on the back of the certificate, having the same attested by the recorder of the subordinate lodge with its seal thereto attached, and paying a fee of fifty cents for a new certificate, which was thereupon to be issued by the supreme lodge upon receipt from the local lodge of this old certificate and attested revocation, and the fee. In this case the member had left the certificate in charge of the local lodge. Subsequently he married and wrote the lodge, enclosing his dues and requesting the officers to send him the certificate made out to his wife. No fee was sent, and the officer of the lodge wrote to him for it. Nothing was done until after the death of the member, when the recorder of the lodge certified the letter to the supreme lodge, which issued the new certificate as requested and afterwards paid it. The suit was by the first beneficiary; judgment was given by the lower court for the defendant, and, in affirming this, the court of appeals said:

"The appellant had but a contingent right to the benefit; not a vested and absolute one. It was subject to be defeated at the will of the assured. The law of the order, as above cited, provides how this shall be done. The regulation is a reasonable one; but the question arises whether it shall govern as between the claimants to the benefit, if the order has seen fit to waive it. We think not. Its object, beyond doubt, was to prevent the appellee from becoming involved in litigation with outside claimants. * * * The direction by the insured to change the benefit was, in the case now under consideration, given through the proper channel. The subordinate lodge referred it to the proper authority, and it saw fit to waive the regulations intended for its benefit and comply with the direction, although made in an informal manner and without the payment of the fee. The *intention* of the assured was to change the benefit. He so directed in writing; and now because he did not do so in the formal

manner prescribed by the law for the benefit of the order, it is asked by a third party, whose interest in the insurance was liable to end at any time at the will of the assured, that his intention shall be defeated, although the party for whose benefit the form was prescribed has seen proper to waive it. Such a rule would sacrific substantial justice to mere form; it would tend to defeat the benevolent aim and purpose of the organization and the desire and intention of the insured. Members of the order may be remote from their lodge; they may not have their certificates with them, and therefore be unable to make the indorsement thereon as directed, or to have it attested by the recorder of their lodge or its seal attached thereto. If the appellee chooses to waive these formalities it does not lie in the mouth of a third party to complain. The order is entitled to know who is entitled to the benefit fund; and the formal mode of changing its directions is for its benefit; while upon the other hand, the right of the beneficiary rests in the mere will of the assured." See to the same effect, *Titsworth* v. *Titsworth*, 20 Pac. Rep., 213 (40 Kan., 571); *Marsh* v. *Legion of Honor*, 21 N. E. Rep., 1070 (149 Mass., 512); *Martin* v. *Stubbings*, 18 N. E. Rep., 657 (126 Ill., 387); *Knights of Honor* v. *Watson*, 15 Atl. Rep., 125 (64 N. H., 517); Beatty's Appeal, Supreme Court of Pennsylvania, 15 Atl. Rep., 861 (122 Pa. St., 428).

Niblack on Benefit Societies and Accident Insurance, in Section 219, after referring to the fact that where the mode of changing the beneficiary is specified in the contract it must be substantially followed, says:

"It seems clear, however, that this rule should be held to apply only to those cases in which the original contract is in existence, and where an attempt was made by the member to change the beneficiary of that contract. Where the original contract has been surrendered by the member and abandoned by both parties to it, the member and the society, it is difficult to see what rights remain to the beneficiary under it. The member and the society have a right to change the terms of the contract by passing new by-laws or otherwise, without the consent of the beneficiary, and it is certainly competent for them to agree to abandon the contract and substitute a new one on substantially the same terms. They are the contracting parties, and the beneficiary has no vested interest until the moment of the death of the member during the continuance of the contract. Where the contract in which he had an expectant interest has been abandoned, and a new one has been taken out in its stead, payable to another, he

has no legal ground of complaint.   There is no longer a contract in which he is even contingently interested.   In most of the cases where the original certificate had been surrendered, and a new one issued, payable to another person, the court considered the question raised by the first beneficiary, whether the change of beneficiaries had been made substantially according to the terms provided in the original contract.   It would seem, however, that the first beneficiary, having had no vested interest in the original contract, had no legal right to urge that question; and it would also seem in those cases that the real question for the court to decide was whether there had been an abandonment of the original contract, and not whether there had been an abandonment of one contract and the substitution of another in the manner provided in the contract for the change of beneficiaries.   The member and the society are the parties to a contract of mutual benefit insurance, and they may during the life of the member agree upon a change of beneficiaries in any manner which is satisfactory to both parties.   When they have agreed upon a new beneficiary, a new contract is in force, and, to the extent of the modification made, the old contract is abandoned and superseded.

"When a society has accepted the surrender of a certificate from the member and issued a new one payable to a new beneficiary, or when a society has actually changed the beneficiary at the request of a member, all questions as to whether the manner and mode of·changing beneficiaries provided in the contract have been followed are concluded and absolutely disposed of.   But where the society and the member did not, during the life of the member, agree upon a change of beneficiaries, where the original contract is in existence, and a right under it has accrued to some one, the original beneficiary will be heard to insist that he is entitled to the proceeds of it because the power of appointment of another person in his stead was not made by the member, one of the parties to it, according to its provisions.   To this extent and no further does the rule apply that when the mode of changing the beneficiary is specified in the contract, it must be substantially followed."

Mr. Niblack sustains his text by numerous authorities, and in note 2 says:

"In most of these cases it was held that there had been a substantial compliance with the terms of the contract relative to changing beneficiaries, but the logic of the cases sustains the doctrine as laid down in the text.   In *Coleman* v. *Supreme*

*Lodge,* 18 Mo. App., 189, it was held that the beneficiary named in the old certificate was not deprived of her rights, and that the society was not made liable by the issue of a new certificate in place of the old one, when the change of beneficiaries had not been made according to the prescribed manner. But this decision is against the fundamental principle of mutual benefit insurance, that the contract is between the member and the society, and that the beneficiary has no vested interest in the contract during the life of the member. This case, though an early one, has never been followed.''

We will refer to but two other authorities on this question.

In the case of *Supreme Conclave Royal Adelphia* v. *Capella,* 41 Fed. Rep. 1 (U. S. Circuit Court, E. D. Michigan), Hon. Henry B. Brown, now one of the judges of the Supreme Court of the United States and of eminent ability, in an exhaustive review of the cases, in the second paragraph of the syllabus lays down the following rule:

''The general rule that the insured is bound to make such change of beneficiary in the manner pointed out by the policy and by-laws of the association is subject to three exceptions. (1) If the society has waived a strict compliance with its own rules, and in pursuance of a request of the insured to change his beneficiary, has issued a new certificate, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. (2) If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made. (3) If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but before the new certificate is actually issued he dies, a court of equity will treat such certificate as having been issued.''

In the opinion upon the first exception he says, p. 4:

''If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. This naturally follows from the fact that, having no vested interest in the certificate during the lifetime of the assured, he has no right to require that the rules of the association, which are framed

alone for its own protection and guidance, are not complied with.''

Mr. Bacon, in speaking of this decision of Judge Henry B. Brown in Section 310 of his work, says:

''This statement of the principles involved will probably always be followed.''

In the case of *Anthony* v. *Benefit Association, supra*, it is said, p. 578:

''The remaining question relates to the manner in which the assignment was assented to. The fifth condition requiring an alteration of a contract to be in writing and signed by the treasurer, and the rule of the association requiring both the member insured and the present beneficiary to sign the form of assignment, we regard as merely regulations framed for the protection of the association, which it may dispense with if it sees fit (see *Supreme Conclave* v. *Capella*, 41 Fed. Rep., 1, 4, and cases cited). If the original beneficiary had not a vested interest in the certificate, the member could assign it without their assent. The assent of the association was sufficiently manifested by the signing of the treasurer's name by the clerk who acted in so doing under the general authority of the treasurer.''

Does the decision of *Charch* v. *Charch, supra*, in any manner conflict with this line of authorities? We think not. In that case the insured attempted to change the beneficiary by will, when the laws of the Legion of Honor provided as to the manner, and the only manner in which the change could be made, which did not include by will, and the court held that the change could not be made by will, but must be made in accordance with the by-laws of the society. The society did not act at all. The insured undertook to act entirely independent of the society, and make the change in direct opposition to the laws of the society.

No question of waiver by the society was involved. Furthermore, the will did not speak until the death of the member. The legatee had no vested right until his death, and at his death the beneficiary, his wife, under the certificate, had a vested right which could not be divested without her consent. The case is in

no respect analogous to the case under consideration and should have no effect upon it.

Did the supreme tent waive the literal performance of the requirements of Section 174? As we have stated before, it received the written request will full knowledge of what had been done. It knew no affidavit had been made, as required. It knew the fifty cents had not been sent with the written request—if it was not sent. With this full knowledge it canceled the old certificate and issued the new one, changing the beneficiary. All this was done by the very highest officers of the society—the supreme commander, and the supreme keeper of records—who had, under the laws of the society entire authority and control over the change of beneficiaries and the society is still satisfied with what it did.

A pertinent inquiry here is, was not the change of beneficiaries made in accordance with the laws of the supreme tent? It could not be claimed that anything more was required than that the rules as laid down in Section 174 should be substantially followed. Niblack on Benefit Societies, Section 218.

All the irregularity that is claimed is that the statement of the assured was not verified and the fifty cent fee was not sent to the supreme record keeper. Everything else was perfectly regular to the letter of the law. The statements in the written request for change of beneficiaries were full and complete. There was nothing in it that was not absolutely true and is so conceded, but the statement was not sworn to. What was there substantial in that omission? No one was misled; no one was injured; and so as to the failure to remit the fifty cents—if it was not remitted. If the supreme tent saw fit to charge the assured with it, or even waive it, certainly it was a trifling matter. If the will, intention and expectation of the insured are to be baffled and frittered away upon such a flimsy pretext, then truly this most popular form of insurance that goes into the homes of the masses would indeed be a snare and a delusion. Mr. Niblack in Section 218, *supra,* says:

"This rule should not be applied with too much particularity and exactness in matters of detail but should be substantially followed."

But it is claimed that the supreme officers of the tent had no authority to issue the new certificate, and that the new certificate is, for that reason, invalid.

It is said that this is a mutual insurance society; that each member is a stockholder and presumed to know the laws of the society, therefore, that the supreme officers had no authority whatever to change the beneficiaries by issuing a new certificate until the rules had been literally complied with; that each member has a right to demand this strictness, and the society or original beneficiary is not estopped by their acts. Such is not the law. In the first place, as we have seen, the law governing beneficial societies in changing beneficiaries is entirely different from the law controlling ordinary mutual insurance companies. They are not organized for profit at all, but are benevolent societies.

Every case heretofore referred to are cases in which the officers acted in waiving the provisions of the rules of the society in making transfers of beneficiaries and in cancelling old and issuing new certificates without strict performance of the rules of the society respecting transfers of beneficiaries, and without any special authority delegated for the purpose. Indeed, such is not the law governing life insurance generally. Nearly all life insurance companies are mutual companies. The policy holder has an interest in the funds of the companies for the payment of dividends. Frequently he is a stockholder. He gives premium notes and is liable to assessment upon the same, and yet it has always been held that the company is estopped from denying the authority of its general agents for acts done in the line of their agency. No authorities are needed for the support of such a familiar rule of law.

These supreme officers received the written request and statement of the insured with full knowledge of all that had been done and all that was left undone. They deliberately canceled the old certificate and issued the new with all the formalities of the laws of the supreme tent.

The assured received the new certificate and acted upon it for twenty months, until his death. He paid his death assessment regularly every month. He died in full belief that his father was his beneficiary. Can it now be said the certificate was in-

valid by reason of the want of authority on the part of the supreme officers? We think not.

In the case of *Ball* v. *Mutual Aid Association*, 9 Atl. Rep., 103 (64 N. H., 291), the insured represented to the society in his application for a benefit certificate that he did not have catarrh and never had it, yet the medical examiner's certificate showed he did have catarrh. Suit was brought upon the certificate by the beneficiary after the death of the insured. The company defended upon the ground of the misstatement in the application, but the Supreme Court of New Hampshire held the society was bound, its supreme officers having knowledge that the insured did have catarrh when he made his application and that, having accepted the monthly assessments from the insured, it was estopped from making the defense. To the same effect see Bacon on Benefit Societies, Sections 95 and 225.

But one other question remains for consideration. In the discussion of the case we have treated it as if the fifty cents required to be deposited with the record keeper, and by him transmitted to the supreme record keeper, had not been so deposited and transmitted. The findings of fact by the court does not show such to be the fact; neither do the pleadings admit it. It is claimed by the plaintiff in error that every fact must be distinctly found by the court necessary to sustain the judgment of the court, and that every fact not so affirmatively specially found is presumed not to exist. In other words, that the fifty cents fee is presumed not to have been paid if the findings of fact do not distinctly show it. We can not subscribe to this being the law. In this case the second certificate was issued by the supreme tent, and the presumption would be that everything was done required to be done under the laws of the supreme tent, if the findings of fact do not show to the contrary. The material fact to be found was that the second certificate changing the beneficiary was issued, and every intendment is in favor of its regularity.

In the case of *Carpenter* v. *Warner*, 38 Ohio St., 416, the court held:

"Where a court is requested under the statute to find and state the facts and law separately, and no objection is made at the

time to the sufficiency of the facts found, a party can not avail himself of a defect in the findings in a court of error, but must submit to such judgment as the facts found require.''

If the facts as found by the court were not sufficiently definite, the defendant in error should have had the defect rectified in the court below.  In the case of *Jack* v. *Hudnall*, 25 Ohio St., 255, the court held:

''Where the finding of facts by the court fairly admits of a construction which will support the judgment, that construction will be adopted rather than a different one which would render the judgment erroneous.''

In *Peter* v. *Manufacturing Co.*, 56 Ohio St., 181, 186, 207, it is said:

''In reviewing a judgment based upon a finding of fact, a reviewing court should steadily lean towards that construction of the finding which would support the judgment; but where, after applying this principle to its fullest extent nevertheless, the reviewing court finds itself in great doubt concerning the grounds upon which the judgment was founded, it, in the exercise of a sound discretion, should require the court rendering the judgment to find the facts more specifically.''

It is true that if the judgment can not be sustained upon the facts as found by the court it must be reversed, or if any material fact is not found by the court which is necessary to support the judgment it must be reversed for the reason that it will be presumed that all facts were found that the evidence justified.  *Springer* v. *Avondale*, 35 Ohio St., 620-623.

That is not this case, for the reason that a fair construction of the fact found by the court, to-wit, the issuing of a certificate in favor of defendant in error, James M. Earley, raises the presumption, as we have said, that the fee of fifty cents was deposited and remitted.

Judgment of common pleas court affirmed.

*Jones & Anderson*, for plaintiff in error.

*Jared Huxley, R. B. Murray* and *D. D. Autkin*, for defendants in error.